**INMATES OF THE SUFFOLK COUNTY JAIL, et al.,
Plaintiffs,**

v.

**Dennis J. KEARNEY, et al.,
Defendants.**

**Civ. A. No. 71–162–K.**

United States District Court,
D. Massachusetts.

April 9, 1990.

———

Max D. Stern and Lynn Weissberg, Stern & Shapiro, Boston, Mass., for plaintiffs.

Chester A. Janiak, Burns & Levinson, Boston, Mass., for the Sheriff of Suffolk Cty.

## MEMORANDUM AND ORDER

KEETON, District Judge.

Before the court is the motion of the Sheriff of Suffolk County, pursuant to Fed. R.Civ.P. 60(b)(5) and (6), to modify the April 9, 1979 consent decree between the parties in this case to the extent of permitting double-celling of inmates in 197 of the 316 regular male housing cells at the new Suffolk County jail at Nashua Street.

I.

This suit was brought in 1971 by inmates of the old Suffolk County jail at Charles Street. The inmates alleged that the incarceration of pretrial detainees in the Charles Street Jail violated the Constitution. The Charles Street Jail was originally designed to house one prisoner per cell, but it was the practice at the time this suit was brought to double-cell prisoners. In his June 20, 1973 opinion and order, Judge Garrity held that

> [a]s a facility for the pretrial detention of presumptively innocent citizens, Charles Street Jail unnecessarily and unreasonably infringes upon their most basic liberties, among them the rights to reasonable freedom of motion, personal cleanliness, and personal privacy. The court finds and rules that the quality of incarceration at Charles Street is "punishment" of such a nature and degree that it cannot be justified by the state's interest in holding defendants for trial: and therefore it violates the due process clause of the Fourteenth Amendment.

*Inmates of Suffolk County Jail v. Eisenstadt*, 360 F.Supp. 676, 686 (D.Mass.1973). The very first element of relief in the final judgment entered by Judge Garrity pursuant to his opinion was a permanent injunction against double-celling at Charles Street Jail. *Id.* at 691. Defendants were also enjoined from holding any detainees at the Charles Street Jail after June 30, 1976. *Id.*

Defendants were unable to produce a plan for a new jail within the time set by the court. By order of June 30, 1977, Judge Garrity set a firm date for the closing of the old jail. While an appeal of that order was pending before the First Circuit, plaintiffs informed the Court of Appeals that they would agree to a further delay in exchange for an enforceable commitment by the defendants to adopt and execute a plan for construction of a new jail, within a reasonable time and according to specified

criteria. The Court of Appeals adopted this proposal and stayed the order closing the old jail until March 3, 1978, to give the parties an opportunity to submit a plan.

The parties were unable to reach an agreement by March of 1978. The Court of Appeals then affirmed the order closing the jail, holding that if defendants did not submit an acceptable plan for a new jail by October 2, 1978, the Charles Street Jail would close on that date. *Inmates of Suffolk County Jail v. Kearney*, 573 F.2d 98, 101 (1st Cir.1978). Defendants then filed a plan, which was approved by the district court, and which provided that the old jail could be used pending completion of the new one. In approving the plan, the court noted that

> the critical features of confinement, such as single cells of 80 sq. ft. for inmates are fixed and safety, security, medical, recreational, kitchen, laundry, educational, religious and visiting provisions are included. There are unequivocal commitments to conditions of confinement which will meet constitutional standards.

October 2, 1978 Memorandum and Order at 2–3.

On May 7, 1979, the court approved a consent decree among the parties embodying this plan. The preamble to this decree noted the desire of all parties "to avoid further litigation on the issue of what shall be built and what standards shall be applied to construction and design," and that the design for the new facility set forth "a program which is both constitutionally adequate and constitutionally required." Consent Decree at 2.

The original plans for the new jail provided for 309 single occupancy cells, to be used for both male and female detainees. During the years following the entry of the consent decree, however, the average number of detainees committed to the Sheriff's custody was increasing. The parties realized that the projections of the detainee population on which the original plans were based were flawed, and that a jail with a larger capacity would be needed. After litigation in the state courts, defendants were ordered to build a larger jail, *Attorney General v. Sheriff of Suffolk County*, 394 Mass. 624, 477 N.E.2d 361 (1985), and this court approved a modification of the consent decree to allow the defendants to increase the capacity of the new jail. One of the conditions for approval of the modification was the maintenance of single-cell occupancy in the revised designs of the new jail. Order of April 11, 1985.

The new jail is now near completion and should be ready for occupancy later this spring.

## II.

■ The Sheriff relies on the provision of Fed.R.Civ.P. 60(b)(5) authorizing modification of a judgment if "it is no longer equitable that the judgment should have prospective application." This portion of the rule codifies the standard set out in *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932), which dealt with a court's inherent power to modify:

> Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

This standard has been consistently followed in the First Circuit. *See Fortin v. Commissioner of Massachusetts Department of Public Welfare*, 692 F.2d 790, 799 (1st Cir.1982). The Sheriff contends that "new and unforeseen conditions" are an alleged substantial and material change in the law regarding the constitutionality of double-bunking and in the operative facts regarding the continuing increases in the Suffolk County pretrial detainee population.

The Sheriff contends that since the consent decree was entered the constitutional standards governing the conditions of confinement of pretrial detainees have been clarified by *Bell v. Wolfish*, 441 U.S. 520,

99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), decided by the Supreme Court one week after the court's approval of the consent decree eleven years ago. In *Bell* the Supreme Court held that the double-bunking practice in effect at the Metropolitan Correctional Center ("MCC") in New York City did not deprive pretrial detainees confined there of their liberty without due process of law. The Court held that the proper inquiry in determining the constitutionality of conditions of pretrial detention was whether the conditions amounted to punishment; the Court found on the record before it that the practice did not amount to punishment. Inmates were confined to cells of approximately 75 square feet of floor space for seven and one-half hours each night. *Id.* at 541, 99 S.Ct. at 1875. Over half of the unsentenced detainees spent less than ten days at the MCC, three-quarters were released within a month, and more than 85% were released within sixty days. *Id.* at 524–25 n. 3, 99 S.Ct. at 1866 n. 3. The Court did not hold that double-celling could never be unconstitutional, and observed that "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment...." *Id.* at 542, 99 S.Ct. at 1875–76.

The cells proposed for double-bunking in the new jail are close in size to those in the MCC: 70 square feet. The Sheriff's proposal is to confine the inmates to their cells for twelve hours per day, eight hours at night and four hours during the day. The parties have provided different statistics on the length of time detainees are being held at the old jail. The Sheriff relies on length of stay statistics from January 1, 1988 through May 31, 1989, showing that approximately 25% of the inmates are released within two days of being committed and 50% within eight days. Defendant's Exhibit 38. Plaintiffs respond that these statistics fail to account for the entire population, and that the "Count of Active Population, by length of stay, effective 9/25/89," prepared by the Sheriff's Department, showed that 32% of the population had been held for more than sixty days, and 14% for more than 120 days. Plaintiffs' Exhibit I–O; Plaintiffs' Memorandum of Law at 15.

■ The conclusion in *Bell* that the conditions of confinement at the MCC did not violate the Constitution necessarily depended on all of the facts and circumstances of that case. As described above, the conditions of confinement proposed by the Sheriff in this case can be distinguished from those in the MCC. *Bell* did not directly overrule any legal interpretation on which the 1979 consent decree was based, and in these circumstances it is inappropriate to invoke Rule 60(b)(5) to modify a consent decree. *See Coalition of Black Leadership v. Cianci,* 570 F.2d 12, 16 (1st Cir. 1978). A party uncertain as to whether the law would require the results proposed to be included in a consent decree can withhold consent, and appeal the decision of the district court if it holds against that party. *Id.* I conclude that defendant has not established a change in the law of the kind that would satisfy the standard of Rule 60(b)(5).

The Sheriff also argues that continuing increases in the Suffolk County pretrial detainee population justify the proposed modification. However, the overcrowding problem faced by the Sheriff is neither new nor unforeseen. It has been an ongoing problem during the course of this litigation, before and after entry of the consent decree, from the time the population projections on which plans for the new jail were based were recognized to be inaccurate, resulting in a modified plan for a larger-capacity jail, through the construction of sixty modular cells at the site of the old jail in 1987, and through a request to permit double-celling in those modular units, denied by this court in January 1989. Various measures have been adopted to deal with the problems of overcrowding while still remaining in compliance with the consent

decree, including transfers to state prisons, bail reviews by the Superior Court, and a pretrial controlled release program. The Sheriff contends that it only became apparent at the end of 1988 that the new jail's capacity would be inadequate, and that by then construction was underway and the design could not be modified, as it had already been once before, to add more cells. However, this motion was not filed until July 1989. Although it is conceded by all parties, and accepted by the court, that increases in jail populations are difficult to predict and are beyond the control of the Sheriff, it nevertheless appears that there has been a marked upward trend in the number of inmates held in the Sheriff's custody since 1985. I conclude that modification is not warranted on these grounds.

Defendant urges that this court apply a more flexible standard for modification, as some circuits (although not the First Circuit) have suggested is appropriate when a decree stems from litigation aimed at institutional reform. *See Philadelphia Welfare Rights Organization v. Shapp*, 602 F.2d 1114 (3d Cir.1979), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980); *New York State Association for Retarded Children, Inc. v. Carey*, 706 F.2d 956 (2d Cir.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983); *Nelson v. Collins*, 659 F.2d 420 (4th Cir.1981); *Plyler v. Evatt*, 846 F.2d 208 (4th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 241, 102 L.Ed.2d 230 (1988). This standard would permit modification of a consent decree even if a defendant cannot establish the unforeseen change in circumstances required by *Swift*. Under this standard a court may grant a modification if a defendant establishes that some change in circumstances has occurred from the time the decree was negotiated and approved and that the defendant has attempted to comply with the decree in good faith, and if the modification requested does not frustrate the original overall purposes of the decree. *See Carey*, 706 F.2d at 969–70; *Philadel-*

*phia Welfare*, 602 F.2d at 1120–21. I conclude, however, that even if I were to apply the flexible standard requested by the Sheriff, modification would not be appropriate. The proposed modification would violate one of the primary purposes of the decree—to provide conditions of confinement for Suffolk County pretrial detainees that meet agreed-upon standards. A separate cell for each detainee has always been an important element of the relief sought in this litigation—perhaps even the most important element. Plaintiffs have been willing on more than one occasion to make concessions and accept delays in order eventually to obtain the elements of relief they considered essential. The type of modification sought here would not comply with the overall purpose of the consent decree; it would set aside the obligations of that decree. The difficulties faced by the defendants in complying with that decree, which this court does not minimize, may understandably lead them to regret some of the terms of the decree, but "[r]egret intensified upon reflection is not ... cause for modification." *Fortin*, 692 F.2d at 800.

The Sheriff has also moved for relief pursuant to Rule 60(b)(6), which allows relief from judgment for "any other reason justifying relief." The Sheriff argues that his proposal for double-celling complies with constitutional standards. Even if this were true, which it is not necessary to decide, it does not provide a basis for relief from a consent decree. To permit relief on this basis would make settlements in cases of this type worth very little. It would undermine and discourage settlement efforts in institutional cases if a defendant were permitted to return to court when terms earlier agreed to became more burdensome than expected. It is the very certainty and finality of a consent decree approved by a court that induces participation in it. Defendants' agreement in this case was a firm one, and not merely an agreement to comply with the decree if it was not too difficult to do so, or to comply with the decree until it arguably required more of the defendants than the absolute minimum they would be constitutionally re-

quired to provide. It was an agreement by all parties to avoid the risks of litigation involved in pressing for a judicial determination of the issue of constitutionality. The terms of the consent decree, as agreed to by all the parties long ago, and as modified when it was appropriate to do so, will continue in effect.

The Sheriff has argued vigorously that in ruling on the present motion the court should weigh, as a factor favoring modification, the likelihood that the Sheriff will be unable to house all detainees committed to his custody and that release of some pretrial detainees may result. This argument must be rejected. If indeed a release of pretrial detainees results from the denial of this motion for modification, that result will have been brought about by choices made by fiscal authorities of the County and the Commonwealth. It is not a legally supportable basis for modification of a consent decree that public officials having fiscal authority have chosen not to provide adequate resources for the Sheriff to comply with the terms of the consent decree, except by requesting permission from other Commonwealth officials for release of pretrial detainees who otherwise would have been held in custody. This court's authority is limited by the established legal requirements for modification, and those requirements have not been met in this case.

### ORDER

For the reasons stated in the foregoing memorandum, it is ORDERED:

The Motion of the Sheriff of Suffolk County for Modification of the Consent Decree is denied.

A conference is scheduled for June 13, 1990 at 3:30 p.m. to determine if it is appropriate, upon occupancy of the Nashua Street facility and transfer of all persons in the plaintiff class from the Charles Street Jail to the Nashua Street facility, to enter Final Judgment in this case, and, if so, in precisely what form.