# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

JOSEPH A., by next friend Corrine
Wolfe; JOSEPHINE A., by next friend
Corrine Wolfe; MICHAEL B., by next
friend Lucy Gale McMurray;
MICHELLE C., by next friend La
Donna Harris and Lucy Gale
McMurray; JOEL D., by next friend
Lucy Gale McMurray; SUSAN E., by
next friend Barbara Burns; DONALD
E., by next friend Barbara Burns;

      Plaintiffs-Appellants,

v.

LAWRENCE B. INGRAM,
MARGARET LARROGOITE,
DAROLD CHRISTIANSEN, and
JANET BRYAN, in their individual
capacities, NORA BUCHANON, in
her official capacity as County Office
Manager of the Bernalillo County
office of the Children Youth &
Families Department, DEBORAH
HARTZ, in her official capacity as
Director of the Protective Services
Division of the Children, Youth &
Families Department, HEATHER
WILSON, in her official capacity as
secretary of the Children, Youth &
Families Department, LINDA S.
GARCIA, in her official capacity as
the County Office Manger of the Santa
Fe County office of the Children,
Youth & Families Department,

      Defendants-Appellees.

No. 00-2136
(D.C. No. CIV-80-623-JC/DJS)
(D.N.M.)

---

ORDER
Filed January 7, 2002

---

Before **EBEL,** Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and
**BRIMMER**,[*] District Judge.

---

Plaintiffs-Appellants' Petition for Rehearing and Suggestion for Rehearing

En Banc is granted in part and denied in part. The Panel Opinion filed August

22, 2001 is withdrawn and the judgment is vacated. The attached Panel Opinion

is issued in its place. The request for rehearing en banc is denied. The

Appellees' Motion for Leave to File a Surreply to Appellants' Reply is granted.

ENTERED FOR THE COURT


Patrick Fisher
Clerk of Court

---

[*]Honorable Clarence A Brimmer, District Court Judge, District of
Wyoming, sitting by designation.

2

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

JOSEPH A., by next friend Corrine
Wolfe; JOSEPHINE A., by next friend
Corrine Wolfe; MICHAEL B., by next
friend Lucy Gale McMurray;
MICHELLE C., by next friend La
Donna Harris and Lucy Gale
McMurray; JOEL D., by next friend
Lucy Gale McMurray; SUSAN E., by
next friend Barbara Burns; DONALD
E., by next friend Barbara Burns;

     Plaintiffs-Appellants,

v.

LAWRENCE B. INGRAM,
MARGARET LARROGOITE,
DAROLD CHRISTIANSEN, and
JANET BRYAN, in their individual
capacities, NORA BUCHANON, in
her official capacity as County Office
Manager of the Bernalillo County
office of the Children Youth &
Families Department, DEBORAH
HARTZ, in her official capacity as
Director of the Protective Services
Division of the Children, Youth &
Families Department, HEATHER
WILSON, in her official capacity as
secretary of the Children, Youth &
Families Department, LINDA S.
GARCIA, in her official capacity as
the County Office Manger of the Santa
Fe County office of the Children,
Youth & Families Department,

No. 00-2136

Defendants-Appellees.

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-80-623-JC/DJS)**

---

Marcia Robinson Lowry, Susan Lambiase, and Rose E. Firestein of Children's Rights, Inc., New York, New York; and Robert Levy of Greer, Wissel & Levy P.A., Albuquerque, New Mexico, for Plaintiffs-Appellants.

Timothy V. Flynn-O'Brien of Bryan & Flynn-O'Brien, Albuquerque, New Mexico, and Patricia A. Madrid, Attorney General and John H. Clough, Assistant Attorney General, New Mexico Attorney General's Office, Albuquerque, New Mexico, for Defendants-Appellees.

---

Before **EBEL,** Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and **BRIMMER,**[*] District Judge.

---

**EBEL**, Circuit Judge.

---

This civil rights class action reaches this court for the second time after more than twenty years of litigation and seventeen years of federal court oversight of New Mexico's Department of Human Services and its successor, the New Mexico Children, Youth and Families Department (collectively "the Department"). Appellants brought suit in 1980 alleging that a variety of systemic

---

[*]Honorable Clarence A. Brimmer, District Court Judge, District of Wyoming, sitting by designation.

problems within the Department led to failures to make timely decisions, which effectively denied them meaningful access to adoption services and a chance to be raised in permanent, stable families.

Three years after the suit was filed and certified as a class action, the parties entered into a consent decree. The first decree was vacated and replaced with a second decree in September 1998. The following year, Appellants moved the district court to hold the Department in contempt for failing to comply with the second decree, and the Department countered with a motion to dismiss on the grounds that the suit is barred by New Mexico's sovereign immunity and that the district court should abstain from hearing the case pursuant to <u>Younger v. Harris</u>, 401 U.S. 37 (1971). The district court rejected the Department's Eleventh Amendment argument, but nonetheless dismissed the case pursuant to the <u>Younger</u> abstention doctrine. Appellants appeal the dismissal of the case, and the Department cross-appeals the district court's rejection of its Eleventh Amendment argument.

In an opinion filed August 22, 2001, this court ruled that the Eleventh Amendment and the <u>Younger</u> abstention doctrine preclude Appellants from pursuing their claims. Appellants filed a petition for rehearing, which we have granted in part. On rehearing, we conclude that the Eleventh Amendment does not bar Appellants' claims, but the <u>Younger</u> abstention doctrine does bar at least

some of the claims. On remand, the district court must determine which provisions of the consent decree pose enforcement problems under <u>Younger</u>. Accordingly, we AFFIRM the district court's judgment in part, VACATE in part, and REMAND for further proceedings consistent with this Opinion.

## I. BACKGROUND

In spite of the extensive history of this case, the background to this appeal is relatively straightforward. Appellants, children who became wards of the state after experiencing abuse or neglect, filed suit against the Department seeking damages and injunctive relief to prevent the Department from causing children to spend unreasonable amounts of time in foster care. The district court certified a plaintiff class representing all those children committed to the Department's custody because of parental neglect or abuse. The Department filed an unsuccessful motion requesting that the court abstain from hearing the case, and the parties subsequently entered into a settlement in which the Department agreed to undertake systemic reforms in exchange for Appellants dropping their request for damages. The district court approved the settlement and entered a consent decree ("Original Consent Decree") to govern the ongoing relationship among the parties and class members.

The Department moved to have the action dismissed in 1994, arguing that it had substantially complied with the terms of the Original Consent Decree, and the district court granted the motion. We reversed, however, and the case was remanded to a special master who recommended that the Department be held in contempt for violating the terms of the settlement. See Joseph A. v. N.M. Dep't of Human Servs., 69 F.3d 1081, 1083-84 (10th Cir. 1995).

In 1998, the parties negotiated a second settlement that was approved by the court to replace the Original Consent Decree. This new settlement was called the "Stipulated Exit Plan" ("SEP"), and it set forth specific benchmarks that would allow the Department to remove itself from the court's jurisdiction, step by step, as each individual benchmark was met. The SEP imposed the following obligations upon the Department:

- Provide caseworkers, supervisors, and adoption specialists with specific training at the time they are hired and periodically during their service in the Department;

- Conduct an individual assessment conference to develop an assessment plan for each child prior to appearing at an initial custody hearing that is held before the New Mexico Children's Court ("Children's Court"), see N.M. Stat. § 32A-4-18(A);

- Conduct a Treatment Planning Conference to develop an individualized treatment plan for each child prior to an adjudicatory hearing held before the Children's Court, see N.M. Stat. § 32A-4-19(B);

- In developing individualized assessment and treatment plans, desist from selecting emancipation as a discharge goal for any child under thirteen years of age "unless the children's court so orders, against the documented recommendation of the Department," and provide counseling to any children between the ages of twelve and fourteen for whom such a goal is selected;

- In developing individualized assessment and treatment plans, desist from selecting long-term foster care as a discharge goal for any child except under specified conditions;

- In developing individualized assessment and treatment plans, desist from retaining a discharge goal of "return-home" for any child that has been in foster care for more than fifteen of the most recent twenty-two months, except in certain specified circumstances including when "[t]he Children's Court has ordered the plan, against the documented recommendation of the Department";

- Review each child's individualized treatment plan no less frequently than every six months;

- File papers with the Children's Court necessary to initiate the termination of parental rights within ninety days of the date that a child's discharge plan is changed to adoption;

- If a child with a plan of adoption is in a conversion home, within sixty days of a child's being freed for adoption, obtain a placement agreement from foster parents who plan to adopt children placed in their home, and, if that is unsuccessful, refer the case to the Department's Central Adoptions Unit;

- If a child with a plan of adoption is not in a conversion home, within thirty days identify three prospective families for adoption, and, if no match is found, assign the case to an adoption recruitment specialist to conduct a child-specific search for an adoptive home;

- Complete home studies of prospective adoptive parents within 150 days of the date of application;

- Require private contractors to comply with the provisions of the Consent Decree;

- Maintain a computerized record system containing certain information specified in the Consent Decree;

- Employ only staff members with certain enumerated qualifications;

- Comply with New Mexico state law and Department regulations concerning Citizen Review Boards; and

- Provide a "Neutral Third Party" appointed by the court to monitor the Department's compliance with the Consent Decree with certain specified information to facilitate oversight.

The following year, Appellants moved the court to hold the Department in contempt for allegedly persistent violations of portions of the SEP. The Department responded by filing another motion for dismissal, arguing that the district court should abstain pursuant to Younger v. Harris, 401 U.S. 37 (1971), and that the suit was barred by the Eleventh Amendment.

The district court rejected the Department's Eleventh Amendment argument, but nevertheless dismissed the case in its entirety on the basis of Younger. Appellants then unsuccessfully moved the district court to alter or amend the order pursuant to Fed. R. Civ. P. 59(e), asserting that the district court applied the wrong standard of review in reaching its decision because the Department's motion to dismiss should have been construed as a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b). This appeal followed.

**II. DISCUSSION**

Jurisdiction

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction to review the district court's dismissal of the action pursuant to 28 U.S.C. § 1291.

A.      Eleventh Amendment Immunity

We first consider the Department's appeal of the district court's holding that this action is not barred by sovereign immunity pursuant to the Eleventh Amendment. "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of [the] underlying . . . claim." Martin v. Kansas, 190 F.3d 1120, 1126 (10th Cir. 1999), overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001).

We review de novo a district court's determination of a motion to dismiss an action for lack of subject matter jurisdiction because of Eleventh Amendment sovereign immunity. See Elephant Butte Irrigation Dist. v. Dep't of the Interior, 160 F.3d 602, 607 (10th Cir. 1998); ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1186 (10th Cir. 1998).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." "Though the text of the Amendment does not expressly so provide, the Supreme Court has interpreted the Amendment to apply to federal question suits against a State brought in federal court by the State's own citizens." Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1195 (10th Cir. 1999) (citing Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 267-68 (1997)). The Supreme Court has recognized two exceptions to the Eleventh Amendment: (1) the state may consent to be sued; or (2) in certain circumstances Congress may clearly and expressly abrogate a state's immunity. See Elephant Butte, 160 F.3d at 607; ANR Pipeline, 150 F.3d at 1187-88. The parties do not argue that either of these exceptions applies in this case.[1]

Ex parte Young, 209 U.S. 123 (1908), provides a third route by which a party may obtain relief against a state agency in federal court. The Ex parte Young doctrine holds that the Eleventh Amendment generally does not stand as a bar to suits in which a party seeks only prospective equitable relief against a state official. See id. at 159-60; ANR Pipeline, 150 F.3d at 1188. "The Young

---

[1]Neither party explicitly argues consent as a basis for waiver of Eleventh Amendment Immunity. Furthermore, the parties expressly reserved the right in the SEP to raise any defenses (which would include an Eleventh Amendment immunity argument). Finally, neither party has argued that Congress has expressly abrogated Eleventh Amendment immunity in this context, and we agree that there is no such express abrogation.

doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity." <u>Coeur d'Alene</u>, 521 U.S. at 288 (O'Connor, J., concurring).

This case on its face plainly falls under the <u>Ex parte Young</u> doctrine, in that it seeks only prospective, injunctive relief against state officers charged with carrying out the Department's functions. The Supreme Court of the United States, however, has recognized two limitations to <u>Ex parte Young</u>, both of which the Department argues apply to this case. The first limitation was applied in <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 74 (1996), in which the Supreme Court held that, "where Congress has prescribed a detailed remedial scheme for the enforcement against a state of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon <u>Ex parte Young</u>." The following year, in <u>Coeur d'Alene</u>, the Court held that <u>Ex parte Young</u> is inapplicable in certain instances where the relief sought implicates special sovereignty interests of the state and is the functional equivalent of relief that is otherwise barred under the Eleventh Amendment. <u>See</u> 521 U.S. at 287-88.

1. *Coeur d'Alene*

We need not delay long over the Department's contention that Coeur d'Alene bars the application of Ex parte Young to this action because this issue is controlled by J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1287 (10th Cir. 1999). In J.B. v. Valdez, three mentally or developmentally disabled children in the custody of New Mexico's Children, Youth and Families Department sought structural reform to the state's system for evaluating and treating mental and developmental disorders afflicting children in state custody. See 186 F.3d at 1282. The district court abstained from hearing the action based on Younger v. Harris, 401 U.S. 37 (1971), and its progeny. See J.B. v. Valdez, 186 F.3d at 1283. The plaintiffs appealed, and the state then added a new argument that the suit should be dismissed on the basis of Eleventh Amendment sovereign immunity, relying, inter alia, on the Coeur d'Alene exception to Ex parte Young. See id. at 1285-86.

We rejected the state's Eleventh Amendment argument, holding that "[a] state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of Ex parte Young." Id. at 1287. Further, we held that such a suit is not the functional equivalent to a suit for money damages, and that it does not "strike at a state's fundamental power, such as the power to tax." See id.

J.B. v. Valdez is squarely on point with the case at hand.  Although we recognize that a state's administration of federally-funded welfare programs for children in its custody involves important state interests, those interests do not implicate the "essential attribute[s] of sovereignty" with which Coeur d'Alene was concerned.  521 U.S. at 283.  Therefore, we hold that Coeur d'Alene does not remove this action from the scope of the Ex parte Young doctrine.

2.    *Seminole Tribe*

The application of the Supreme Court's decision in Seminole Tribe raises more difficult issues.  The Department argues that Seminole Tribe requires dismissal because Congress created a detailed remedial scheme governing a state's obligation to provide child welfare services under Title IV of the Social Security Act with the passage of the Adoption and Safe Families Act of 1997, 42 U.S.C. §§ 673b, 679b & 678, and the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670 et seq.

In Seminole Tribe, the Supreme Court held that Ex parte Young jurisdiction is inapplicable where "Congress chose to impose upon the State a liability that is significantly more limited than would be the liability imposed upon the state officer under Ex parte Young."  517 U.S. at 75-76.  The Seminole Tribe plaintiffs based their suit on Florida's alleged violation of § 2710(d)(3) of the Indian

Gaming Regulatory Act, 25 U.S.C. § 2710(d). The Court found that violations of § 2710(d)(3) were to be enforced against the State in actions brought under § 2710(d)(7), a provision "intended . . . not only to define, but also to limit significantly, the duty imposed by § 2710(d)(3)." 517 U.S. at 74. The Court explained:

> For example, where the court finds that the State has failed to negotiate in good faith, the only remedy prescribed is an order directing the State and the Indian tribe to conclude a compact within 60 days. And if the parties disregard the court's order and fail to conclude a compact within the 60-day period, the only sanction is that each party then must submit a proposed compact to a mediator who selects the one which best embodies the terms of the Act. Finally, if the State fails to accept the compact selected by the mediator, the only sanction against it is that the mediator shall notify the Secretary of the Interior who then must prescribe regulations governing class III gaming on the tribal lands at issue.

Id. at 74-75. "By contrast with this quite modest set of sanctions," the Court recognized, "an action brought against a state official under Ex parte Young would expose that official to the full remedial powers of a federal court, including, presumably, contempt sanctions." Id. at 75. Thus, if the substantive requirements of § 2710(d)(3) "could be enforced in a suit under Ex parte Young, § 2710(d)(7) would have been superfluous" because an Indian tribe would have no reason to "suffer through the intricate scheme of § 2710(d)(7) when more complete and immediate relief would be available under Ex parte Young." Id.

- 14 -

One key aspect of the <u>Seminole Tribe</u> analysis is the Court's indication that the determination as to whether a statutory scheme precludes other remedies determines whether the scheme forecloses <u>Ex parte Young</u> claims:

> Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary. <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423, 108 S. Ct. 2460, 2468, 101 L. Ed. 2d 370 (1988) ("When the design of a Government program suggests that Congress has provided for what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional . . . remedies"). Here, of course, the question is not whether a remedy should be created, but instead is whether the Eleventh Amendment bar should be lifted, as it was in <u>Ex parte Young</u>, in order to allow a suit against a state officer. Nevertheless, we think that <u>the same general principle applies</u>: Therefore, where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon <u>Ex parte Young</u>.

<u>Id.</u> at 74 (emphasis added). This is important because the case law on the preclusion of § 1983 remedies is well-developed and the holdings are consistent, at least for our purposes, in casting doubt on the notion that comprehensive <u>substantive</u> requirements, rather than a comprehensive <u>remedial</u> scheme, can suffice to foreclose <u>Ex parte Young</u> jurisdiction.

For example, in <u>Blessing v. Freestone</u>, 520 U.S. 329 (1997), five mothers whose children were eligible to receive child support services from the State of Arizona brought a § 1983 suit based on the State's violation of Title IV-D of the

Social Security Act, 42 U.S.C. §§ 651-669b. The plaintiffs alleged that they had an enforceable individual right to have the State achieve "'substantial compliance'" with Title IV-D's requirements. Id. at 333. The Court first observed that "[e]ven if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983." Id. at 341. Dismissal is still proper if Congress foreclosed a § 1983 remedy either expressly or "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Id. In this regard, a § 1983 remedy "cannot be defeated simply by the availability of administrative mechanisms to protect the plaintiff's interests." Id. at 347 (quotation and alteration omitted). The Court found that Title IV-D "contains no private remedy – either judicial or administrative – through which aggrieved persons can seek redress," but rather relies only on the federal government's oversight. Id. at 348. Those oversight powers, the Court concluded, "are not comprehensive enough to close the door on § 1983 liability." Id.

The Supreme Court has found a statutory scheme sufficiently comprehensive to preclude § 1983 suits in only two cases. In Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1 (1981), the Court held that the "express remedies" provided by the Federal Water Pollution Control

Act, 33 U.S.C. § 1251 et seq., and the Marine, Protection, Research, and Sanctuaries Act, 33 U.S.C. § 1401 et seq., demonstrated "not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983." 453 U.S. at 21. In particular, the Court relied on the fact that the statutes provided "comprehensive enforcement mechanisms," id. at 20, including suits by government officials, suits by "'any interested person,'" and "citizen-suit provisions" authorizing private persons to sue for injunctive relief. Id. at 13-14. Against this background, the Court found it "hard to believe that Congress intended to preserve the § 1983 right of action." Id. at 20.

The only other statutory scheme that the Supreme Court has found sufficiently comprehensive to foreclose a § 1983 suit is the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1400, et seq. In Smith v. Robinson, 468 U.S. 992 (1984), the Court recognized that the EHA "establishes an enforceable substantive right to a free appropriate public education," along with "an elaborate procedural mechanism to protect the rights of handicapped children." Id. at 1010-11. The procedures reflect "Congress' intent that each child's individual educational needs be worked out through a process that begins on the local level and includes ongoing parental involvement, detailed procedural safeguards, and a right to judicial review." Id. at 1011. "In light of the comprehensive nature of

the procedures," the Court found it "difficult to believe that Congress also meant to leave undisturbed the ability of a handicapped child to go directly to court with an equal protection claim to a free appropriate public education." Id.  Such a result would not only "render superfluous most of the detailed procedural protections outlined in the statute," but "it would also run counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." Id. at 1011-12.  The Court thus held that "Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim." Id. at 1012.

Courts have consistently held that statutory schemes that merely give oversight and funding control to the federal government do not foreclose § 1983 claims.  See Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 521-22 (1990) (holding that, even though Medicaid Act "authorizes the Secretary to withhold approval of plans or to curtail federal funds to States whose plans are not in compliance with the Act," this "scheme cannot be considered sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy of § 1983" (citation omitted)); Wright v. City of Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 428 (1987) ("The Court of Appeals and respondents rely on HUD's authority to audit, enforce annual contributions

contracts, and cut off federal funds. But these generalized powers are insufficient to indicate a congressional intention to foreclose § 1983 remedies."). In some courts, the issue is no longer contested. See Doe v. Chiles, 136 F.3d 709, 719 (11th Cir. 1998) (observing that appellants "wisely" chose not to argue that Congress has foreclosed enforcement of the Medicaid Act under § 1983).

The same reasoning has led at least one court to conclude that oversight and funding authority does not bring a statute within Seminole Tribe's exception. See Maryland Psychiatric Soc'y, Inc. v. Wasserman, 102 F.3d 717, 719 n.* (4th Cir. 1996) (applying Wilder to reject Seminole Tribe argument without extensive discussion). And while the Supreme Court has not addressed whether funding remedies bring a statute within Seminole Tribe, the Court did observe, in dicta, that the enforcement provisions of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620-28, 670-79a, "may not provide a comprehensive enforcement mechanism so as to manifest Congress' intent to foreclose remedies under § 1983." Suter v. Artist M., 503 U.S. 347, 360 (1992).

The Department portrays the statute as providing not only funding remedies, but a private cause of action through the Multiethnic Placement Act's jurisdictional provision. (Resp. at 3.) Even if the Adoption Assistance Act provided for a private cause of action in addition to its funding remedies, that would not foreclose claims under Ex parte Young unless the cause of action was

- 19 -

more limited than what would be available under Ex parte Young. In Marie O. v. Edgar, 131 F.3d 610 (7th Cir. 1997), the Seventh Circuit held that the remedial provisions set forth in Part H of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1471-85, did not fall within the Seminole Tribe exception to Ex parte Young even though they gave a district court the authority to "grant such relief as [it] determines is appropriate." Id. at 616 (alteration in original) (quoting 20 U.S.C. § 1480(1)). Because that language did "not expressly limit the role of the district court in redressing complaints concerning the failure of a state to implement the mandatory aspects of Part H," the court found Seminole Tribe inapplicable. Id. See also AT&T Comm. v. Bellsouth Telecomm., Inc., 238 F.3d 636, 648 (5th Cir. 2001) (finding Seminole Tribe inapplicable because it "cannot be said that Congress intended in the 1996 [Telecommunications] Act to limit significantly the federal judicial remedies available to an aggrieved party authorized to bring suit in an appropriate federal court"); Telespectrum, Inc. v. Public Serv. Comm'n, 227 F.3d 414, 420-21 (6th Cir. 2000) (finding Seminole Tribe inapplicable where statute does not "provide for a remedy more limited than or materially different from that available under Ex parte Young"); MCI Telecomm. Corp. v. Illinois Bell Tel. Co., 222 F.3d 323, 347 (7th Cir. 2000) (finding Seminole Tribe inapplicable to provision of 1996 Telecommunications Act giving jurisdiction to federal district court because provision "does not limit

the role or the power of the district court"), cert. denied, 531 U.S. 1132 (2001); MCI Telecomm. v. Public Serv. Comm'n, 216 F.3d 929, 939-40 (10th Cir. 2000) (holding, without discussion, that Seminole Tribe does "not affect the application of Ex parte Young" to cases brought under § 252 of the Telecommunications Act, despite fact that provision gives aggrieved parties right to sue in federal court (quotation omitted)), cert. denied, 531 U.S. 1183 (2001). In this regard, the Multiethnic Placement Act is no help to the Department because it only deals with a narrow issue not before us and, even then, it simply allows an individual aggrieved by adoption-related discrimination to bring a suit in federal court, see 42 U.S.C. § 674(d)(3)(A), and places no limits on what would be available under Ex parte Young.

Finally, while the Adoption Assistance Act also contemplates state court remedies for some violations, in this case the possibility of some state court remedies does not suggest that Congress intended to foreclose federal remedies. See Wright, 479 U.S. at 429 (holding that a "state-court remedy is hardly a reason to bar an action under § 1983, which was adopted to provide a federal remedy for the enforcement of federal rights").

Viewed in the light offered by this case law, the statutes at issue in this case do not provide remedial schemes sufficient to foreclose Ex parte Young jurisdiction.

In its response to Appellants' petition for rehearing, the Department argues that "any attempt to create a private right of action against the state through the Social Security Act would be unconstitutional as violating the Eleventh Amendment." (Resp. Br. at 4.) This argument misconstrues the nature of Appellants' cause of action. Appellants are not trying to create a private right of action against the Department under the Social Security Act. Rather, Appellants' suit is based on an implied cause of action against state officials under Ex parte Young, which is available to enjoin state officials from the violation of the Constitution or other federal law. See Green v. Mansour, 474 U.S. 64, 68 (1985) ("[T]he availability of prospective relief of the sort awarded in Ex parte Young gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law."); Milliken v. Bradley, 433 U.S. 267, 289 (1977) (recognizing that Ex parte Young "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law"); Burgio and Campofelice, Inc. v. New York Dep't of Labor, 107 F.3d 1000, 1006 (2d Cir. 1997) ("[T]he best explanation of Ex parte Young and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution or laws." (quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure:

- 22 -

Jurisdiction 2d § 3566, at 102 (1984))); Guaranty Nat'l Ins. Co. v. Gates, 916 F.2d 508, 512 (9th Cir. 1990) (same). Ex parte Young claims do not implicate the Eleventh Amendment. See, e.g., Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring) ("The Young doctrine rests on the premise that a suit against a state official to enjoin an ongoing violation of federal law is not a suit against the State."). Accordingly, allowing Appellants to proceed with their claims under Ex parte Young does not run afoul of the Eleventh Amendment.

B.     Younger Abstention

In addressing whether Appellants' claims run afoul of the Younger abstention doctrine, two preliminary matters must be considered. First, we need to consider Appellants' contention that the Department in the Original Consent Decree waived any right to raise the Younger abstention doctrine. Second, even if there is no waiver, Appellants argue that the Department has not demonstrated a significant change in fact or law since the SEP sufficient to justify the district court's modification of that decree.

1.     *Waiver*

Appellants' waiver argument is based on the following language in the Original Consent Decree: "Plaintiff and the Secretary of the New Mexico Human Service Department hereby settle the declaratory and injunctive claims of this

action, and the court hereby ORDERS that the Plaintiffs and the Secretary and his successors are bound as follows . . . ." The language of the Original Consent Decree, however, does not constitute the last word between the parties on the matter. Rather, the SEP contains the following provision: "If either party decides to return to court for determination of any issue after December 31, 1998, execution of this Exit Plan shall not be deemed a waiver or compromise of any obligation, defense or assertion of any legal right or remedy which either party may claim." Hence, the narrow question before us is whether the Department's seemingly unqualified submission of this issue to the district court in the Original Consent Decree trumps the parties' broad reservation of rights and defenses in the subsequent SEP.

We construe the terms of a consent decree de novo using traditional principles of contract interpretation. See, e.g., Joseph A., 69 F.3d at 1085. Although we may assume without deciding that the language of the Original Consent Decree would be sufficient to constitute a waiver of the Department's right to seek abstention under Younger, see, e.g., Morrow v. Winslow, 94 F.3d 1386, 1390 (10th Cir. 1996) (a state may waive Younger jurisdiction by voluntarily submitting a controversy to the jurisdiction of a federal forum), the key issue in this case is the effect of the SEP language reserving the right to raise additional defenses. In approving the SEP, the district court did not merely

modify the Original Consent Decree; it vacated the earlier decree in favor of the new one.  "A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel."  Franklin Sav. Ass'n v. Office of Thrift Supervision, 35 F.3d 1466, 1469 (10th Cir. 1994) (citations and quotations omitted); see also Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 662 (1st Cir. 1997) ("Vacating a consent decree . . . wipes the slate clean, not only rendering the decree sterile for future purposes, but also eviscerating any collateral effects and, indeed, casting a shadow on past actions taken under the decree's imprimatur.").  Thus, the only agreement that is ultimately relevant to this issue is the SEP, which explicitly stated that the SEP "shall not be deemed a waiver or compromise of any . . . defense or assertion of any legal right or remedy which either party may claim."  In light of its clear reservation of defenses, we conclude the Department has not waived its right to argue in favor of Younger abstention.

In their petition for rehearing, Appellants contend that the Department waived its Younger defense simply by entering into the SEP.  Basically, Appellants insist that the SEP would be meaningless if the Department preserved the defense, because enforcement of the SEP would be precluded.  Appellants overlook the fact that the SEP provided that no defenses could be raised for one full year, which means that the parties enjoyed the bargained-for benefits for that

year, regardless of whether any of the potential defenses ultimately proved successful.  In light of this one-year "cease fire" – which has since expired – along with the fact that the SEP expressly preserved all defenses, Appellants' argument lacks merit.

2.    *Standard of Review of the <u>Younger</u> Claim*

Having found that the Department did not waive its right to argue <u>Younger</u> abstention, we must yet determine the standard of review we should utilize in analyzing the merits.  In general, we review de novo a district court's application of the <u>Younger</u> abstention doctrine.  Appellants, however, contend that the SEP constitutes a final judgment, and therefore that the Department must satisfy the rigorous standards for modification of a consent decree pursuant to Rule 60(b) of the Federal Rules of Civil Procedure as set forth in <u>Rufo v. Inmates of the Suffolk County Jail</u>, 502 U.S. 367 (1992).  In <u>Rufo</u>, the Supreme Court held that a party seeking a modification of a consent decree under Rule 60(b), "bears the burden of establishing that a significant change in circumstances warrants revision of the decree . . . .  A party seeking modification of a consent decree may meet its initial burden by showing either a significant change in factual conditions or in law."  <u>Id.</u> at 383-84; <u>see also</u> <u>David C. v. Leavitt</u>, 242 F.3d 1206, 1211-12 (10th Cir. 2001).  A district court's decision to modify a consent decree is

reviewed for abuse of discretion. See, e.g., id. at 1210; Cablevision of Texas, III, L.P. v. Okla. W. Telephone Co., 993 F.2d 208, 210 (10th Cir. 1993).

In this case, however, the Department is not seeking to modify the decree itself. Rather, it is seeking resolution of an unlitigated defense which not only was not specifically addressed in the decree, but was explicitly removed from its coverage by the reservation of rights and defenses. Under such circumstances, Rufo's requirement that a party to a consent decree make a threshold showing of changed circumstances prior to modification of the decree does not govern our analysis.

        3.    *Younger Analysis*

We now turn to the merits of the Department's Younger abstention argument. "Under the Younger abstention doctrine, federal courts should not 'interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings –' when a state forum provides an adequate avenue for relief." Weitzel v. Div. of Occupational and Prof'l Licensing, 240 F.3d 871, 875 (10th Cir. 2001) (quoting Rienhardt v. Kelly, 164 F.3d 1296, 1302 (10th Cir. 1999)). We review de novo a district court's application of the Younger abstention doctrine, see Taylor v. Jaquez, 126 F.3d 1294, 1296 (10th Cir. 1997), recognizing that abstention "is the exception, not the

- 27 -

rule." Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992). "It should be 'rarely . . . invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them.'" Roe #2 v. Ogden, 253 F.3d 1225, 1232 (10th Cir. 2001) (quoting Ankenbrandt, 504 U.S. at 705).

Younger requires that a federal court refrain from hearing an action over which it has jurisdiction "when [the] federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) affords an adequate opportunity to raise the federal claims." J.B. v. Valdez, 186 F.3d at 1291. Once a court finds that the required conditions are present, abstention is mandatory. See, e.g., Amanatullah v. Colorado Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999) ("Younger abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances.").

It is apparent that federal enforcement of some of the SEP's provisions would significantly interfere with state court proceedings. Particularly problematic in light of Younger are the provisions governing assessment and treatment planning conferences for children entering the Department's custody and periodic review of the Department's plans for those children. These provisions require that the Department conduct two conferences – one for assessment of the child and another to create a long-term plan of services for the

child while in the Department's custody. In addition, the Department is required to review the long-term plan every six months to ensure it remains appropriate. The provisions set forth detailed requirements for the contents of each plan,[2] as well as a number of restrictions on the Department's planning flexibility. For example, unless the Children's Court so orders against the documented advice of the Department, the SEP precludes the Department from recommending emancipation for children who are twelve years old or younger, and requires that children aged twelve to fourteen receive counseling before a plan of emancipation can be established. Further, the SEP bars the Department from setting a permanency planning goal of long-term foster care unless no other goal is appropriate and a social worker consultant supervisor has approved the plan. The Department is also barred from maintaining a plan of "Return Home" for more than fifteen of the most recent twenty-two months that a child is in custody unless special circumstances exist or the Children's Court so orders against the documented recommendation of the Department. It is against this background that we conduct our Younger analysis.

---

[2]For example, assessment plans must include findings to identify the reason a child is in custody, make a safety assessment and plan for the child, establish a visitation plan if appropriate, identify a permanency planning goal, identify necessary services and steps to reach the permanency planning goal, and identify parties responsible for each plan item. Treatment plans must contain similar information and, in addition, include a description of steps and services necessary to facilitate family reunification or to achieve an alternative permanent plan.

Appellants do not contest the district court's finding that the case at bar implicates important state interests. Although the members of the plaintiff class are each individually engaged in ongoing proceedings before the family court, see N.M. Stat. § 32A-4-16 et seq. (creating jurisdiction in Children's Court to adjudicate status of allegedly abused and neglected children),[3] Appellants contend that their class suit is at most parallel to the state court proceedings. Further, Appellants argue that we should reverse the district court because the systemic relief sought in this case is not available in the New Mexico Children's Court.

A court should not abstain from exercising its jurisdiction based merely on the presence of parallel state and federal suits. See, e.g., Green v. City of Tucson, 255 F.3d 1086, 1097-99 (9th Cir. 2001). Moreover, we recognize that this is not the typical Younger case in which a federal court is asked either to enjoin an action from proceeding in state court, cf., e.g., Younger, 401 U.S. at 38-39 (considering suit to enjoin Los Angeles district attorney from enforcing state law alleged to be unconstitutional), or to issue a declaratory judgment that would have

---

[3]Specifically, when a child has been taken into the Department's custody, New Mexico state law requires the Children's Court to conduct: (1) a preliminary hearing to determine whether probable cause exists to justify additional custody and proceedings, see § 32A-4-18; (2) an adjudicatory hearing, see § 32A-4-19; (3) a dispositional hearing which results in extensive factual findings and a determination of the level of state services necessary for the child, see § 32A-4-22; (4) periodic reviews of the child's welfare following the dispositional hearing, see § 32A-4-25; and (5) a permanency hearing to determine when and if the child should be returned to his or her parents. See § 32A-4-25.1.

essentially the same effect as an injunction. Cf., e.g., O'Hair v. White, 675 F.2d 680, 695 (5th Cir. 1982). Enforcement of the SEP, however, requires interference with the operations of the Children's Court in an insidious way in that the SEP expressly prevents the Department's employees from recommending a range of planning options for children who are in the Department's custody. This limitation has an effect not unlike that of an injunction or declaratory judgment because the Department is precluded ever from presenting certain options to the Children's Court. Therefore, the state court is, for all practical purposes, precluded from considering these options. Courts, albeit in different contexts, have frequently observed that independent, vigorous advocacy is essential to the operation of our adversary system and as such essential to the rule of law. See, e.g., Legal Servs. Corp. v. Velazquez, 121 S.Ct. 1043, 1050-51 (2001) ("An informed, independent judiciary presumes an informed, independent bar. . . . By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power."); Penson v. Ohio, 488 U.S. 75, 84 (1988) ("The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth – as well as fairness – is '"best discovered by powerful statements on both sides of the question."'"

(citations omitted)); <u>Walters v. Nat'l Assoc. of Radiation Survivors</u>, 473 U.S. 305, 371 (1985) (Stevens, J., dissenting) ("[T]he citizen's right of access to the independent, private bar is itself an aspect of liberty that is of critical importance in our democracy.");[4] <u>In re McConnell</u>, 370 U.S. 230, 236 (1962) ("An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice."); <u>Heffernan v. Hunter</u>, 189 F.3d 405, 413 (3d Cir. 1999) ("The right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns."). A federal court's enforcement of a decree that bars an attorney from acting as an independent advocate for an outcome he or she believes is appropriate similarly interferes with the operations of a state court. The SEP therefore implicates that prong of <u>Younger</u> which counsels for abstention when the federal jurisdiction would interfere with an ongoing state proceeding.

In their petition for rehearing, Appellants contend that applying <u>Younger</u> under these circumstances would stretch the abstention doctrine beyond recognition. However, the cases cited by Appellants do not suggest that <u>Younger</u>

---

[4]Indeed, Justice Stevens notes that William Shakespear's oft-quoted line, "The first thing we do, let's kill all the lawyers," was not an invective against the legal profession, but rather was spoken by a rebel who "realized that disposing of lawyers is a step in the direction of a totalitarian form of government." <u>See Walters</u>, 473 U.S. at 371 n.24 (Stevens, J., dissenting and quoting William Shakespear, <u>King Henry VI</u>, pt. II, Act IV, scene 2, line 72).

abstention is inappropriate under these circumstances.  Appellants rely on the Fifth Circuit's holding in <u>Ciudadanos Unidos de San Juan v. Hidalgo Cty. Grand Jury Comm'ners</u>, 622 F.2d 807 (5th Cir. 1980), that abstention is improper where "the relief is directed to a time prior to the initiation of any actual judicial proceedings."  <u>Id.</u> at 830 n.49.  The complaint in that case challenged the exclusion of certain groups from the grand jury pool; the court emphasized that the requested relief "can be fully accomplished and evaluated before any actual proceedings are commenced [and] before even the grand jury's consideration of any indictments."  <u>Id.</u>  Here, the SEP's restrictions are ongoing, and they impact the conduct of the proceedings themselves, not just the body charged with initiating the proceedings.

The other cases cited by Appellants do not establish the limits of <u>Younger</u> abstention.  <u>See, e.g.</u>, <u>Crawley v. Hamilton Cty. Comm'ers</u>, 744 F.2d 28, 30 (6th Cir. 1984) (finding <u>Younger</u> inapplicable where "the plaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts").[5]

---

[5] Contrary to Appellants' argument, the Ninth Circuit has not held that <u>Younger</u> is inapplicable "<u>unless</u> the federal court action seeks to enjoin, declare invalid, or otherwise involve the federal courts in terminating or truncating the state court proceedings."  (Pet. at 12 (quotation and alteration omitted) (emphasis added).)  Rather, the Ninth Circuit held that <u>Younger</u> applies only where the requested relief would interfere with the ongoing state proceedings; the court then observed that the action at issue "did not seek to enjoin, declare invalid, or involve the federal courts in terminating or truncating the state proceedings."

(continued...)

Although not directly on point, a more relevant case is O'Shea v. Littleton, 414 U.S. 488 (1974), in which the Supreme Court, reversing the Seventh Circuit, upheld the dismissal of a § 1983 suit on Younger grounds. The suit alleged that various officials in an Illinois county, including two judges, unfairly targeted blacks for criminal prosecution. Id. at 491-92. The two judges allegedly engaged in certain unfair practices regarding the setting of bond and sentencing. And while there was no specific indication as to the type of injunctive relief that might be justified, the Seventh Circuit had "suggested that it might include a requirement of periodic reports of various types of aggregate data on actions on bail and sentencing." Id. at 493 n.1 (quotation omitted).

The Supreme Court held that such a suit could not be heard in federal court. In language that is at least indirectly supportive of our holding, the Court reasoned:

> Respondents do not seek to strike down a single state statute, either on its face or as applied; nor do they seek to enjoin any criminal prosecutions that might be brought under a challenged criminal law. . . . What they seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials. The [proposed] order . . . would be operative only where permissible state prosecutions are pending against one or more of the beneficiaries of the injunction. Apparently the order would contemplate interruption of state proceedings to adjudicate

---

[5](...continued)

Green v. City of Tucson, 255 F.3d 1086, 1098 (9th Cir. 2001). The distinction is subtle, but important.

assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that <u>Younger v. Harris</u> . . . sought to prevent.

<u>Id.</u> at 500. Even though "[t]he Court of Appeals disclaimed any intention of requiring the District Court to sit in constant day-to-day supervision of these judicial officers," the "periodic reporting system it thought might be warranted would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity." <u>Id.</u> at 501 (quotation and footnote omitted). Given "the availability of other avenues of relief open to respondents for the serious conduct they assert, and the abrasive and unmanageable intercession which the injunctive relief they seek would represent," the Court held that the federal courts could not hear the suit. <u>Id.</u> at 504.

In <u>Suggs v. Brannon</u>, 804 F.2d 274 (4th Cir. 1986), the Fourth Circuit applied <u>O'Shea</u>'s reasoning to a complaint challenging state officials' enforcement of anti-obscenity laws. The complaint alleged that officials had been harassing adult book store employees, repeatedly arresting them, and subjecting them to inordinately high bail amounts. The plaintiffs tried to circumvent <u>Younger</u> by emphasizing that "they do not seek to enjoin the state prosecutions or even to obtain a declaratory judgment that the obscenity statutes are unconstitutional." <u>Id.</u> at 278. Rather, "they seek injunctive relief only against bad faith enforcement of the obscenity laws that chill their first amendment rights

- 35 -

without due process of law, issuing court orders barring them from the bookstores where they are employed, fixing excessive bail, intimidating them by threats of future prosecutions, and engaging in illegal searches and seizures." Id. The court held that abstention was proper because "[e]ntry of such an injunction would require the district court to direct and monitor part of the state proceedings." Id. at 279. Other courts have echoed this reasoning. See, e.g., Bonner v. Circuit Court, 526 F.2d 1331, 1336 (8th Cir. 1976) (applying Younger because complaint seeking to enjoin state officials from violating Constitution "would require nothing less than an ongoing federal audit of state criminal proceedings" (quoting O'Shea, 414 U.S. at 500)).

The reasoning of O'Shea and its progeny suggests that federal court oversight of state court operations, even if not framed as direct review of state court judgments, may nevertheless be problematic for Younger purposes. And other cases establish that the federal court's role need not focus on a particular state court proceeding to fall within the scope of Younger. For example, in Williams v. Rubiera, 539 F.2d 470 (5th Cir. 1976), the Fifth Circuit applied Younger to a complaint seeking a declaration that state court defendants were entitled to court-appointed counsel for crimes punishable by a fine, but not imprisonment. Id. at 471-72. The Fifth Circuit held that abstention was required because "[i]f relief were granted in this case it would have the effect of a federal

- 36 -

court telling a state court how to run an ongoing criminal prosecution, i.e., whether it could constitutionally try the defendant without appointed counsel." Id. at 473. This "would have the intrusive impact on the state proceeding that Younger and its progeny abhorred." Id. at 474.

Similarly, in Luckey v. Miller, 976 F.2d 673 (11th Cir. 1992), the Eleventh Circuit held that Younger barred federal courts from hearing a § 1983 suit challenging Georgia's indigent defense system. The complaint sought the following relief:

(1)     a court order providing for an indigent defense system that;

    (a)     furnishes counsel, if requested, at probable cause determinations;

    (b)     furnishes speedy appointment of counsel for critical stages;

    (c)     furnishes adequate services and experts; and

    (d)     furnishes adequate compensation for counsel

(2)     a court order that "uniform standards be promulgated and adopted governing the representation of indigent [sic] consistent with the judgment in this case";

(3)     monitor the implementation of those standards;

(4)     award attorney's fees and other proper relief.

Id. at 676. The plaintiffs sought to avoid Younger by contending that "they do not seek to contest any criminal conviction, nor to restrain any criminal

prosecution, and that they seek only to have this Court consider systemic issues which cannot be raised in any individual case." Id. at 677. The Sixth Circuit nevertheless applied Younger, reasoning that "a decree of the sort requested by the plaintiffs would, inevitably, interfere with every state criminal proceeding." Id. In some regard, the SEP's requirements will have a discernible impact on juvenile court proceeding in New Mexico – albeit not to the same degree as the order requested in Luckey.

The fact that the SEP's requirements constrain the State's attorneys, rather than the court directly, does not preclude Younger's application, for the reasoning reflected in the above line of cases applies not just to state court judges, but to officers of the court. For example, in J.P. v. DeSanti, 653 F.2d 1080 (6th Cir. 1981), the plaintiffs brought suit challenging state court probation officers' practice of preparing "social histories" of juvenile defendants and providing them to the court before disposition of the cases. The histories included extensive personal histories of the defendants, but were not made available to the defendants themselves. See id. at 1082. The Sixth Circuit held that the Supreme Court case law requires abstention if federal intervention would cause interference with such a state proceeding and the federal issue can be raised in the state proceeding. Id. at 1084. Under this standard, the court observed that the juvenile court's "predisposition use of social histories is an integral part of [its]

handling of cases," and that the proposed relief would "entail[] ongoing federal court interference with the daily operations of the juvenile court." Id. at 1084. Under these circumstances, Younger abstention was required. Id. at 1085.

Younger governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly. See News-Journal Corp. v. Foxman, 939 F.2d 1499, 1511 (11th Cir. 1991) (abstaining from hearing newspaper's challenge to state court's pre-trial gag order because an injunction "impermissibly would restrict the ability of the trial court to impanel an impartial jury"); Kevorkian v. Thompson, 947 F. Supp. 1152, 1164 (E.D. Mich. 1997) (holding that enjoining state from prosecuting defendant would violate Younger).

The relevant case law supports abstention where, as here, federal court oversight of state court proceedings is required, coupled with significant restrictions on the freedom of attorneys to present information to the court. Under these circumstances, it is appropriate to apply Younger, especially given the Supreme Court's recent emphasis on the importance of independent and unfettered advocacy to the operation of the courts. See Legal Servs. Corp., 121 S. Ct. at 1050-51. Accordingly, Younger mandates that the federal courts abstain from enforcing at least some of the SEP's provisions.

After concluding that Younger requires abstention in this case, the district court simply applied Younger to the entire SEP without verifying that the enforcement of each provision would interfere with state court proceedings. A provision-by-provision Younger analysis appears prudent, however, for the fact that one provision may not be enforceable in light of Younger does not necessarily warrant voiding the entire consent decree (see SEP at 9-10 (providing that State is relieved from performing particular provision if that performance is rendered impossible)), or dismissing the entire action. Cf. Doran v. Salem Inn, Inc., 422 U.S. 922, 930-31 (1975) (dismissing claims of one plaintiff pursuant to Younger, but allowing co-plaintiffs' claims to proceed because they did not pose risk of interference with ongoing state court proceedings); Ballard v. Wilson, 856 F.2d 1568, 1571-72 (5th Cir. 1988) (dismissing claims for injunctive relief pursuant to Younger, but allowing claim for monetary damages where such claim was not cognizable in state court proceedings).

Some of the SEP's provisions may be characterized as stand-alone provisions, amenable to enforcement independent of the more problematic provisions. While this issue is best left for the district court to resolve on remand, this court offers some preliminary observations. Enforcement of the provisions governing training of social workers (SEP at 2-3), the development of a computerized management information system (SEP at 7), and qualifications for

- 40 -

social workers (SEP at 7-8) do not appear to risk interference with state court proceedings. As discussed above, the provisions governing assessment and treatment planning conferences present a stronger risk of running afoul of Younger. Also, federal enforcement of the provision calling for the use of state-created Citizen Review Boards may be problematic. Under state law, the Board reviews the disposition of children in the Department's custody prior to judicial review. The Board then submits a report to the Children's Court, which becomes part of the child's permanent court record. See NM ST §§ 32A-8-5, 32A-8-6. In making the Citizen's Review Board proceedings enforceable by a federal district court, the SEP asks the federal court to review the operation of a mechanism that is an essential part of the state court proceedings. This certainly suggests a risk of improper interference with state proceedings under Younger. See DeSanti, 653 F.2d at 1085-86 (applying Younger abstention where plaintiff sought to enjoin probation officers' practice of preparing "social histories" of juvenile defendants because the juvenile court's use of the histories "is an integral part of [its] handling of cases"). Many of the remainder of the SEP's provisions appear to be procedural, setting forth the means by which the State can exit the decree's requirements, and it is not obvious, at least on the record before us, that they would pose Younger problems.

However, rather than making decisions as to which provisions do, and do not, violate <u>Younger</u>, we deem it more prudent to remand for further briefing and findings by the district court. The various SEP provisions may present complexities not apparent on the record before us. Thus, the district court should determine in the first instance which, if any, of the SEP's provisions can be enforced in light of <u>Younger</u>.

Finally, we must consider whether the state proceedings offer adequate opportunities for Appellants to raise their claims. In opposing abstention on the grounds that the federal remedy requested is not available in state court, "[p]laintiffs bear the burden of proving that state procedural law barred presentation of their claims in the New Mexico Children's Court." <u>J.B. v. Valdez</u>, 186 F.3d at 1292. As an initial matter, it is clear that the Children's Court has the power to consider federal claims, including claims of procedural due process violations. <u>See</u> <u>State ex rel. Children, Youth & Families Dep't v. Ruth Anne E. (In re Ruth Anne E.)</u>, 974 P.2d 164, 171 (N.M. Ct. App. 1999) (reversing Children's Court for failing to grant continuance on procedural due process grounds to allow incarcerated parent to attend hearing to terminate parental rights); <u>T.B. v. State (In re T.B.)</u>, 913 P.2d 272, 276 (N.M. Ct. App. 1996) (affirming Children's Court's rejection of a motion for attorneys fees under 42

- 42 -

U.S.C. § 1988 in light of the Children's Court's dismissal of a due process claim brought under 42 U.S.C. § 1983).

Appellants contend, however, that it is not enough that they may be able to raise their federal claims in the context of their individual proceedings before the Children's Court. Rather, they argue that abstention is inappropriate because the Children's Court Rules of Civil Procedure make no provision for class actions, and therefore the Children's Court will never be presented with a set of facts that would enable it to grant the systemic injunctive relief they sought against the Department in the present action.

We assume without deciding that the Children's Court is not authorized to hear class actions and other representative suits.[6] However, we could find no case, and Appellants cite none, that hold that a party is entitled to avoid the effects of the <u>Younger</u> abstention doctrine in cases where relief is available to individual litigants in ongoing state proceedings but not to represented parties in a

---

[6]Appellants cite <u>In re T.B.</u>, 913 P.2d at 274, to show the Children's Court Rules of Civil Procedure preclude the Children's Court from considering cases seeking systemic relief against the Department. Although Appellants are correct that the Children's Court dismissed a motion brought under § 1983 to require the Department "to submit an action plan for a system for the proper licensure and regulation of therapeutic foster care" as "not well taken," <u>In re T.B.</u> does not hold that such systemic relief is never available from the Children's Court. The New Mexico Court of Appeals addressed the propriety of the dismissal only in dicta, noting that the Guardian ad Litem who brought the motion "did not identify by citation what federal laws or constitutional provisions secure the rights he was seeking to enforce" under § 1983. <u>Id.</u> at 275.

class action.  See J.B. v. Valdez, 186 F.3d at 1292 (abstaining in light of court's conclusion that "plaintiffs fail to clearly show that the Children's Court could not have adjudicated these federal claims during the periodic review process").  Moreover, we note that Appellants have not attempted to raise their procedural due process claims in their individual proceedings.  "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume the state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987).  Here, the Appellants have failed unambiguously to show that the relief they seek, including structural relief, would not effectively be available through the Children's Court.

### III.  CONCLUSION

We affirm the district court's ruling that Appellants' claims are not barred by the Eleventh Amendment, albeit for different reasons than were reflected in the district court's opinion.  Some of Appellants' claims may run afoul of the Younger abstention doctrine, but we vacate and remand so that the district court may determine whether any of the SEP's provisions may be enforced in light of Younger.  The district court's judgment is AFFIRMED in part and VACATED in

part.  The case is REMANDED for further proceedings consistent with this opinion.