**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 9 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID C., NICHOLAS N., DORA D.,
MARTIN B., AGNES W., KENNY G.,
by their next friend, DONNA
BROWN; BELLA, PETER, ESTHER,
and MARY F., by their next friend
CAROL T.; JONAS, BRENDA,
MERCY, and CYNTHINA A., and
CAROLINE, SARAH, and TIMOTHY
P., by their next friend SHIRLEY Z.;
on their own and on behalf of others
similarly situated,

        Plaintiffs-Appellees,

v.

MICHAEL LEAVITT, in his official
capacity as Governor of Utah; ROBIN
ARNOLD-WILLIAMS, in her official
capacity as Director of the Department
of Human Services; KEN
PATTERSON, in his official capacity
as Director of the Division of Child
and Family Services,

        Defendants-Appellants.

No. 99-4223

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 93-CV-206)

---

Martha Matthews, (Michelle Cheng, on the brief), National Center for Youth Law, Oakland, California, (Gregory Dresser, Morrison and Foerster, San Francisco, California, on the brief), for Plaintiffs/Appellees.

Annina M. Mitchell, Deputy Solicitor General, State of Utah, (Jan Graham, Attorney General, State of Utah, on the brief), Salt Lake City, Utah, for Defendants/Appellants.

Before **TACHA**, Chief Judge, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Appellees brought a class action lawsuit against Appellants, officials of the State of Utah (hereinafter "Utah"), alleging federal constitutional and statutory violations in the operation of Utah's child welfare system.  After the district court extended the deadline for answering the complaint, the parties were involved in settlement negotiations for a full year.  The parties eventually entered into a settlement agreement (the "Agreement") which imposed numerous obligations on Utah, including, *inter alia*, obligations to investigate reports of child abuse or neglect within specific deadlines; provide placement support services for foster parents; and ensure that foster children attend school and receive medical and dental treatment.  The Agreement was incorporated into a final order signed by

the district court on August 29, 1994 (the "Consent Decree"), and its provisions became binding on the parties.

By its terms, the Agreement was to terminate four years after it was approved by the district court. At the end of the four-year period, however, Utah was not in compliance with the terms of the Agreement. Appellees filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from the four-year termination provision. The district court granted the relief requested and Utah appealed. Exercising jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), we **affirm** .

## II.    FACTUAL BACKGROUND

As a means to cure the constitutional and statutory violations alleged by Appellees, Utah agreed to implement ninety-three substantive provisions contained in the Agreement. In addition to delineating the obligations assumed by Utah, the Agreement contained procedures designed to insure compliance with those obligations. One provision established a three-member panel (the "Monitoring Panel") and charged this panel with the task of evaluating Utah's compliance. The Monitoring Panel was empowered to make findings of compliance or non-compliance with each provision of the Agreement. If the Monitoring Panel made a finding of non-compliance, it was directed to develop a corrective action plan which Utah was obligated to implement within a specified

period of time. Under the Agreement, a party could challenge the findings of the Monitoring Panel. The district court would then enter its own finding of compliance or non-compliance after reviewing the evidence *de novo*.

The Agreement also contained a provision entitled "Enforcement of the Agreement" (the "Enforcement Provision"). This provision stated, in part,

> The Court shall retain jurisdiction over these claims solely for the purpose of enforcement of the Agreement. If non-compliance is not resolved through the corrective action process, as described above, the Court may enter any necessary orders to enforce the Agreement.

Another provision, entitled "Termination of the Agreement" provided, "The Agreement shall terminate in 48 months from the date it is given final approval by the Court."

Two years after the Agreement was approved by the district court, Appellees, alleging Utah was either unable or unwilling to fulfill the obligations it undertook pursuant to the terms of the Agreement, filed a Motion to Enforce Settlement Agreement and Appoint Receiver. In support of their motion, Appellees relied on three Monitoring Panel reports, each of which found Utah in non-compliance with a majority of the provisions in the Agreement. Additionally, Appellees argued that Utah's non-compliance had not been remedied through the corrective action process and alleged that Utah was engaged in a bad-faith attempt to try and outlast the four-year term of the Agreement.

On March 17, 1997, the district court entered an order granting Appellees' motion in part and denying it in part. After independently reviewing the reports submitted by the Monitoring Panel and related information, the court found Utah in non-compliance with the Agreement and, thus, in non-compliance with the Consent Decree. After concluding that the corrective action process set forth in the Agreement had failed, the court ordered the parties to bypass the corrective action process and further ordered the Monitoring Panel to prepare a new plan for correcting any non-compliance (the "Comprehensive Plan"). Utah was ordered to implement the Comprehensive Plan. The court, however, denied Appellees' request to appoint a receiver to oversee the Division of Child and Family Services.

On May 13, 1998, Appellees filed a Motion to Extend the Term of the Settlement Agreement. Appellees conceded in their motion that the Agreement was set to expire by its own terms on August 29, 1998. Appellees argued, however, that the Enforcement Provision gave the court the authority to enter all necessary enforcement orders, including the authority to enter an order extending the term of the Agreement to ensure compliance with its terms. In the alternative, Appellees argued that the district court possessed the inherent equitable power to modify the Agreement by extending the term of the Agreement and the court's jurisdiction over it. Although the district court

concluded that it possessed the equitable power to modify the Agreement, it also concluded that "without some additional proposal for reforming the system so that it will work," the plaintiff class would not benefit from an extension of the term of the Agreement. The court thus declined to exercise its equitable power and denied Appellees' motion. The court stated, however, "If the parties are able to negotiate a new settlement agreement that incorporates the lessons acquired in the last four years, this court will certainly give a hard look at such a proposal."

On August 14, 1998, two weeks before the Agreement was set to expire, the Comprehensive Plan was filed with the court. Appellees immediately filed a Motion to Enforce the Comprehensive Plan. In their brief to the court in support of their motion, Appellees characterized the Comprehensive Plan as a specific proposal that would "replace *procedural* mechanisms of the Agreement that had proved ineffective." Appellees requested that the district court retain jurisdiction until Utah had fully implemented the Comprehensive Plan. The district court took Appellees' motion under advisement and ordered Utah to refine the Comprehensive Plan. Utah was ordered to submit the completed Comprehensive Plan to the court "for purposes of supplementing the record."

The revised Comprehensive Plan was filed in May 1999. The district court, after reviewing the revised Comprehensive Plan, granted Appellees'

motion, extended the term of the Agreement, and retained jurisdiction over the implementation of the Comprehensive Plan. Utah then brought this appeal.

## III. DISCUSSION

### A. Standard of Review

The parties first disagree on whether the district court's inherent equitable power to modify the Agreement encompassed the power to alter the Termination Provision. [1] This question involves the scope of the district court's authority and

---

[1]Utah also argues that a district court, when interpreting a consent decree to determine the parameters of the court's enforcement powers over the decree, is bound by the unambiguous language used in the decree. It relies upon the Supreme Court's statement that a consent decree must be "construed for enforcement purposes basically as a contract." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). Utah then vigorously argues that under the plain language of the Termination Provision, judicial enforcement could not be extended beyond August 28, 1998. It further argues that an order extending judicial intervention is not an order which enforces the terms of the Agreement and thus the court did not have the power under the Enforcement Provision to alter the plain language of the Termination Provision. In light of our conclusion, *infra*, that the district court's order was a permissible *modification* of the Agreement, it is unnecessary for this court to address the argument that the district court's order was not a permissible *interpretation* of the Agreement. *See id.* at 236 n.9 (discussing two cases in which the Court applied contract principles to construe a consent decree but left open the possibility of equitable modification of the decree); *see also United States v. Knote*, 29 F.3d 1297, 1302 (8th Cir. 1994) ("[E]ven if the structure, language, and context of the decree did not combine to render the district court's interpretation of the text permissible, the district court has the inherent equitable power to modify a consent decree . . . ." (quotation omitted)). It is, likewise, unnecessary for this court to address Appellees' argument that the district court's order extending judicial intervention was a valid exercise of the court's power under the Enforcement Provision to enforce its March 17, 1997 order.

thus is a question of law which this court reviews *de novo*. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 576-78 (1984); *cf. Hull v. United States*, 971 F.2d 1499, 1504 (10th Cir. 1992) ("The scope of the district court's authority to specify the form of an award of damages is a question of law . . . ."). Assuming the court possessed such power, the parties also disagree on whether the court properly exercised that power in this case. This question is reviewed under the abuse of discretion standard. *See EEOC v. Safeway Stores, Inc.*, 611 F.2d 795, 799-800 (10th Cir. 1979). The district court's factual findings are reviewed for clear error. *See Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998).

B.    *The Scope of the District Court's Equitable Modification Power*

Utah concedes that courts possess the equitable power to modify consent decrees when changed circumstances support modification. Utah argues, however, that the court's modification power is circumscribed and cannot be exercised to substantially alter an unambiguous provision that is material to the parties' agreement. Utah contends that the Termination Provision is not properly subject to equitable modification because it is both unambiguous and a material provision that "lies at the very heart of the parties' deal settling this lawsuit without going to trial."

Utah's position that courts have no equitable power to modify material provisions is foreclosed by *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367 (1992). In *Rufo*, the district court refused to order modification of a consent decree, in part, because the provision was "an important element . . . perhaps even the most important element" of the decree. *See Inmates of the Suffolk County Jail v. Kearney*, 734 F. Supp. 561, 565 (D. Mass. 1990). The Supreme Court, however, specifically addressed and unambiguously rejected the district court's conclusion, stating that "[i]f modification of one term of a consent decree defeats the purpose of the decree, obviously modification would be all but impossible. That cannot be the rule. The District Court was thus in error in holding that . . . modification of the [provision] was necessarily forbidden." *Rufo*, 502 U.S. at 387. Thus, it is apparent from *Rufo* that a court's equitable modification power extends to material provisions in a consent decree.

In support of its position that a court's equitable power is circumscribed by an unambiguous termination provision in a consent decree, Utah relies on cases in which the court was interpreting the decree, not exercising its equitable modification powers. *See*, *e.g.*, *South v. Rowe*, 759 F.2d 610, 613 (7th Cir. 1985); *Sanders v. Shell Oil Co.*, 678 F.2d 614, 617-18 (5th Cir. 1982). The issue we address here, however, is whether the district court possessed the equitable power to modify its own order if changed circumstances warrant such

modification. We do not address the question of whether the district court erred in interpreting the terms of the Agreement or exceeded its authority in enforcing the Agreement. *See supra*, note 1. While it may be true that a court charged with *interpreting* a consent decree is bound by an unambiguous termination provision contained in the decree, a court exercising its broad equitable power to *modify* the consent decree is not similarly constrained. Thus, the authority upon which Utah relies is inapposite. Additionally, if we accept Utah's argument, in every modification case the district court would be required to make an initial determination whether the termination provision is ambiguous. We decline to impose any such obligation on the court.

Contrary to Utah's assertions, a court's equitable power to modify its own order in the face of changed circumstances is an inherent judicial power that cannot be limited simply because an agreement by the parties purports to do so. *See South*, 759 F.2d at 613 ("Of course, the parties could not agree to restrict the court's equitable powers to modify its judgment enforcing the consent decree, including the two-year limitation period, in light of 'changed circumstances.'"). A court's broad, equitable power to modify its own orders is not limited to modification of ambiguous provisions. To hold otherwise would allow the parties, by the terms of their agreement, to divest a court of its equitable power or significantly constrain that power by dictating its parameters.

Finally, Utah argues that courts can exercise their equitable powers to relieve defendant parties of obligations they assumed when they entered into unlitigated decrees, but that courts have no authority to modify unlitigated consent decrees if the modification expands the defendant party's obligations. Utah submits that the district court thus lacked the authority to modify the Termination Provision because the modification expanded the obligations it voluntarily assumed under the terms of the Agreement.

Utah concedes generally, as it must, that a court sitting in equity has the authority to modify an unlitigated consent decree. *See United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent. . . . If the reservation had been omitted [from the terms of the decree], power there still would be by force of principles inherent in the jurisdiction of the chancery."); *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 646-47 (1961). It is equally settled that a court has the equitable power to impose additional obligations on a defendant party to a consent decree when the decree is entered into after an adjudication of wrongdoing on the part of the defendant. *See United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 251 (1968). Utah, however, attempts to distinguish between the scope of a court's power to modify litigated consent decrees and its power to modify unlitigated decrees. It argues

that a court has no authority to modify an unlitigated consent decree if the modification imposes additional, substantial obligations on the defendant party. *See Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1153 (6th Cir. 1992); *Fox v. HUD*, 680 F.2d 315, 323 (3d Cir. 1982).

If we unconditionally accept Utah's argument, a plaintiff party to an unlitigated consent decree could never seek equitable modification of the decree pursuant to Rule 60(b) of the Federal Rules of Civil Procedure because any such modification would invariably impose an additional obligation on the defendant party. The plain language of Rule 60(b), however, makes no distinction between plaintiffs and defendants but allows either "party" to seek relief from a judgment or order. *See* Fed. R. Civ. P. 60(b). Thus, Rule 60(b) does not categorically prohibit a plaintiff party to an unlitigated consent decree from seeking modification of the decree. Additionally, nothing in *Rufo* limits its application to cases in which modification is sought by the defendant party. *See Rufo*, 502 U.S. at 383 (stating the holding by using the neutral language, "a party seeking modification" and "[i]f the moving party meets this standard"); *see also Juan F. v. Weicker*, 37 F.3d 874, 879 (2d Cir. 1994) (applying *Rufo* in a case where modification was sought by the plaintiff party); *Williams v. Edwards*, 87 F.3d 126, 131-32 (5th Cir. 1996) (same). We reject the general proposition that only defendants can seek equitable modification of unlitigated consent decrees.

It is unnecessary for this court to decide whether a court lacks authority to modify an unlitigated consent decree in a way that materially expands the defendant party's obligations because this case does not present that question. Here, the district court granted Appellees relief from the four-year Termination Provision by extending the term of the Agreement. Regardless of how Utah attempts to characterize the court's modification, the extension of the term of the Agreement to allow Utah to fulfill the very obligations it voluntarily undertook when it entered into the Agreement is not itself an imposition of additional, material obligations on Utah. We thus reject Utah's argument that the district court lacked authority to modify the Termination Provision because the modification expanded its obligations.[2]

Having considered and rejected each of Utah's arguments, we conclude that the district court had the authority to modify the Termination Provision.[3]

---

[2]Our conclusion is the same whether Utah's argument is construed as a claim that the district court exceeded its authority when it modified the Termination Provision or a claim that the district court abused its discretion when it exercised its authority.

[3]Utah has not argued that modification of the Termination Provision is prohibited because it would conflict with federal law or violate public policy. *See*, *e.g.*, *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 576 n.9 (1984). We, therefore, do not address this issue.

*C.  The District Court's Exercise of its Equitable Modification Power*

In *Rufo*, the Supreme Court formulated a two-step process to determine whether a consent decree in an institutional reform litigation case should be modified and the extent of any such modification. *See* 502 U.S. at 383. Under the *Rufo* approach, "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Id*. When attempting to show the requisite change in circumstances, however, the party seeking modification ordinarily cannot rely "upon events that actually were anticipated at the time it entered into a decree." *Id*. at 385. If the moving party can meet its initial burden, the court may modify the decree if the modification is "suitably tailored to the changed circumstance." *Id*. at 383.

Appellees argue that Utah's significant non-compliance with the terms of the Agreement at the end of the four-year period constitutes a changed circumstance that supports equitable modification. Utah appears to concede that its non-compliance is a significant change in circumstances, but argues Appellees have failed to meet their initial burden under *Rufo* because the non-compliance was both foreseeable and actually foreseen by Appellees when they entered into the Agreement. *See id*. at 385 (holding that movant is ordinarily not entitled to modification of consent decree if the changed circumstances were actually foreseen at the time of the agreement).

Utah's argument that non-compliance with the terms of a consent decree is always foreseeable and thus can never constitute a changed circumstance is clearly foreclosed by Supreme Court precedent. The proper focus is on whether Utah's non-compliance was *actually foreseen* by Appellees, not whether the non-compliance was *foreseeable*. *See id*. at 384, 386 n.10 (rejecting a standard that would require the movant to show that the changed circumstance was not foreseeable).

Utah also maintains that Appellees were well aware when they entered into the Agreement that compliance would not be completed within four years and thus the changed circumstances were actually foreseen by Appellees. Utah contends that Appellees failed to meet their burden of demonstrating a "significant change of fact" because they failed to show that they did not actually foresee the non-compliance. While it is true that Appellees, as the moving party, bear the burden of demonstrating that they did not actually foresee Utah's significant non-compliance, the district court's conclusion that Appellees satisfied that burden is amply supported by the evidence presented to the court.

The district court found that Utah was "20 percent in compliance and 80 percent in noncompliance" with the provisions of the Agreement. The court's finding of Utah's substantial non-compliance is supported by four reports prepared by the Monitoring Panel. Utah conceded at oral argument that it has

never contested the non-compliance figures contained in the Monitoring Panel reports. Thus, the district court's finding of substantial non-compliance is not clearly erroneous. Based on the findings of substantial non-compliance, the district court concluded that "[n]either the parties nor the court could have predicted back in 1994 that very substantial increases in funding would lead to higher levels of noncompliance with the [Agreement]. Such unforseen circumstances provide an objective basis for equitable intervention by this court to rescue, if necessary, the purposes of the agreement."

Utah's arguments notwithstanding, it would defy logic for Appellees to agree to include the four-year Termination Provision in the Agreement if they actually foresaw that Utah would not be in substantial compliance with the terms of the Agreement at the end of the four-year period. Based on the evidence before the district court, the court could reasonably conclude that Utah's significant non-compliance was not actually foreseen by Appellees. Accordingly, the district court's conclusion that the Agreement should be modified to extend the term of the Agreement was not an abuse of discretion. [4]

---

[4]Utah has not argued that the modification was not suitably tailored to remedy the changed circumstance. *See Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 383 (1992). We, therefore, do not address that issue. *See Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998) (holding that arguments not raised in opening brief are waived).

## IV.   CONCLUSION

The district court had the equitable power to modify the Termination Provision and the court properly exercised that power under the facts of this case. Consequently, the district court's order modifying the Agreement is hereby **affirmed** .