Filed: May 4, 2005

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 04-1535
(CA-05-309-MJG)

CARMEN THOMPSON; RHONDA HARRIS; JOANN
BOYD; DORIS TINSLEY; LORRAINE JOHNSON;
ISAAC J. NEAL, on behalf of themselves
and all others similarly situated,

Plaintiffs - Appellees,

versus

U.S. DEPARTMENT OF HOUSING & URBAN
DEVELOPMENT; ALPHONSO JACKSON, in his
official capacity as United States Acting
Secretary of Housing and Urban Development,

Defendants - Appellants,

and

HOUSING AUTHORITY OF BALTIMORE CITY; DANIEL
P. HENSON, III, in his official capacity as
Executive Director of the Housing Authority
of Baltimore City and the Commissioner of
the Baltimore City Department of Housing and
Community Development; MAYOR AND CITY COUNCIL
OF BALTIMORE CITY,

Defendants.

-----------------------------------------------

JONESTOWN PLANNING COUNCIL, INCORPORATED,

Movant.

O R D E R

The court amends its opinion filed April 15, 2005, as follows:

On page 3, last paragraph, line 4 -- "HUD'S" is corrected to read "HUD's."

On page 13, first paragraph, line 30 -- an apostrophe is added after the word "Defendants."

For the Court - By Direction

    /s/ Patricia S. Connor
          Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARMEN THOMPSON; RHONDA HARRIS;
JOANN BOYD; DORIS TINSLEY;
LORRAINE JOHNSON; ISAAC J. NEAL,
on behalf of themselves and all
others similarly situated,
*Plaintiffs-Appellees,*

v.

U.S. DEPARTMENT OF HOUSING &
URBAN DEVELOPMENT; ALPHONSO
JACKSON, in his official capacity as
United States Acting Secretary of
Housing and Urban Development,
*Defendants-Appellants,*

and

HOUSING AUTHORITY OF BALTIMORE
CITY; DANIEL P. HENSON, III, in his
official capacity as Executive
Director of the Housing Authority
of Baltimore City and the
Commissioner of the Baltimore City
Department of Housing and
Community Development;
MAYOR AND CITY COUNCIL OF
BALTIMORE CITY,
*Defendants.*

No. 04-1535

JONESTOWN PLANNING COUNCIL,
INCORPORATED,
*Movant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(CA-05-309-MJG)

Argued: December 2, 2004

Decided: April 15, 2005

Before WILKINS, Chief Judge, and MICHAEL
and TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Chief Judge Wilkins and Judge Michael concurred.

---

## COUNSEL

**ARGUED:** Thomas Mark Bondy, UNITED STATES DEPART-
MENT OF JUSTICE, Civil Division, Appellate Section, Washington,
D.C., for Appellants. Wilma A. Lewis, CROWELL & MORING,
Washington, D.C., for Appellees. **ON BRIEF:** Howard M.
Schmeltzer, Assistant General Counsel for Litigation, David M.
Reizes, Trial Attorney, UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT, Office of General
Counsel, Washington, D.C.; Peter D. Keisler, Assistant Attorney Gen-
eral, Thomas M. DiBiagio, United States Attorney, Mark B. Stern,
Appellate Staff, Civil Division, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellants. Andrew D. Free-
man, BROWN, GOLDSTEIN & LEVY, L.L.P., Baltimore, Mary-
land; David L. Haga, CROWELL & MORING, L.L.P., Washington,
D.C., for Appellees.

**OPINION**

TRAXLER, Circuit Judge:

In 1995, African-American public housing residents (the "Plaintiffs") filed a class action against the United States Department of Housing and Urban Development and its then-Secretary Henry Cisneros (referred to together as "HUD"), along with the Housing Authority of Baltimore City and various Baltimore officials (together, the "Local Defendants"), seeking to eliminate racial segregation and discrimination in Baltimore's public housing system. In 1996, the parties entered into a Partial Consent Decree (the "Consent Decree") resolving some of the issues raised in the complaint. The Consent Decree stated that the district court would exercise jurisdiction for only a limited period of time.

With the end of the court's jurisdiction over HUD looming, the Plaintiffs filed a motion requesting that the district court modify the Consent Decree to extend the period during which it would exercise jurisdiction over HUD. The district court granted the motion, and HUD appeals. For the reasons set forth below, we affirm.

I.

Baltimore's public housing system began in the 1930s as an officially segregated program. The city abandoned its official segregation policies shortly after the Supreme Court's decision in *Brown v. Board of Education*, 347 U.S. 483 (1954). In their class action complaint, the Plaintiffs alleged, *inter alia*, that while the formal policy of segregation was no longer in place, the Local Defendants were perpetuating the former *de jure* segregation through their racially based assignments of public housing applicants and through their decisions regarding the placement of new housing projects.

The parties ultimately agreed to settle some of the claims asserted in the class action, an agreement that was formalized in the Consent Decree. The Consent Decree imposes numerous obligations on the Local Defendants and HUD. Many of HUD's obligations under the Decree are related to the obligations imposed on the Local Defen-

dants, in that most (if not all) of the steps that the Local Defendants are required to take under the Consent Decree require HUD'S cooperation and approval. The Consent Decree provides that the district court will have jurisdiction over the Local Defendants until their obligations under the decree have been satisfied, and that the court will have jurisdiction over HUD for seven years after the approval of the Decree. The Consent Decree was approved on June 25, 1996; under the terms of the Consent Decree, the district court's jurisdiction over HUD was to expire on June 25, 2003. HUD acknowledges, however, that it has obligations under the Consent Decree that extend well beyond June 2003.

Although the Consent Decree has been in effect since 1996, the Local Defendants have fallen jaw-droppingly short of fulfilling their obligations. The Local Defendants are woefully behind schedule with regard to many provisions of the Consent Decree, but one failing is of primary importance to this case. Among other things, the Consent Decree requires that the Local Defendants make available 911 "hard" housing units—that is, actual housing units, as opposed to rent vouchers—in areas of Baltimore referred to in the Decree as "Non-impacted areas."[1] The 911 hard units of housing were to be made available within six and a half years after the approval of the Decree —*i.e.*, December 2002. By that date, however, the Local Defendants had managed to supply only *eight* of the required units.

Faced with the utter failure of the Local Defendants to comply with the terms of the Consent Decree and the impending termination of the district court's jurisdiction over HUD, the Plaintiffs in May 2003 filed a motion asking the district court to modify the Consent Decree to extend the term of its jurisdiction over HUD. The Plaintiffs argued that the failure of the Local Defendants to comply with the Decree was a significant change of circumstance warranting a modification of the Decree. The Plaintiffs contended that since HUD must approve the plans and actions required of the Local Defendants under the Consent Decree, the district court should retain jurisdiction over HUD. Under the original terms of the Consent Decree, the district court's

---

[1]Generally speaking, non-impacted areas are those without high concentrations of minority residents or public housing. *See Thompson v. HUD*, 220 F.3d 241, 244 (4th Cir. 2000).

jurisdiction over HUD terminated six months after the date that the Local Defendants were to have provided the 911 hard units of public housing. The Plaintiffs therefore requested that the district court extend its jurisdiction over HUD for an additional three years, which would give the court jurisdiction for six months after the date by which the Local Defendants projected they would be able to provide the required 911 housing units.

The district court granted the Plaintiffs' motion to modify the Decree. The court held that the Local Defendants' "level of compliance fell so far short of complete as to be beyond any reasonable degree of expectations or acceptability." J.A. 509. The district court concluded that the magnitude of the Local Defendants' non-compliance amounted to a change of circumstance sufficient to warrant modification of the Consent Decree, notwithstanding the fact that HUD was not responsible for the delays of the Local Defendants. The district court, however, declined to extend its jurisdiction over HUD by the three years requested by the Plaintiffs. Instead, the district court extended its jurisdiction "until such time as HUD shows that its obligations have been fulfilled approximately to the same extent as the parties and the Court originally and reasonably contemplated would have been fulfilled by June 25, 2003." J.A. 516-17. This appeal followed.

## II.

It has long been recognized that courts are vested with the inherent power to modify injunctions they have issued. That same authority also exists with regard to a court's consent decrees, which regulate future conduct and thus operate as injunctions:

> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions though it was entered by consent. . . . Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the

> need. The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. The result is all one whether the decree has been entered after litigation or by consent. In either event, a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. We reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act.

*United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932) (citations omitted); *see Benjamin v. Jacobson*, 172 F.3d 144, 161 (2d Cir. 1999) (en banc) ("The proposition that a court has the authority to alter the prospective effect of an injunction in light of changes in the law or the circumstances is, of course, well established."); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) ("Anglo-American courts have always had the inherent equitable power to modify consent decrees imposing ongoing injunctive relief.").

The court's inherent authority to modify a consent decree or other injunction is now encompassed in Rule 60(b)(5) of the Federal Rules of Civil Procedure. *See Plyler v. Evatt*, 924 F.2d 1321, 1324 (4th Cir. 1991); *Money Store, Inc. v. Harriscorp Fin., Inc.*, 885 F.2d 369, 372 (7th Cir. 1989). Under Rule 60(b)(5), a court may relieve a party from an order if "it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5).

In *Rufo v. Inmates of Suffolk County*, 502 U.S. 367 (1992), the Supreme Court considered the application of Rule 60(b)(5) to consent decrees, like this one, springing from institutional reform litigation. The Court noted that, traditionally, the standard for modifying consent decrees was quite flexible, *see id.* at 379, and that the need for a flexible approach was particularly great as to consent decrees arising out of institutional reform litigation:

> The upsurge in institutional reform litigation since *Brown v. Board of Education* . . . has made the ability of a district

court to modify a decree in response to changed circumstances all the more important. Because such decrees often remain in place for extended periods of time, the likelihood of significant changes occurring during the life of the decree is increased. . . .

The experience of the District Courts and Courts of Appeals in implementing and modifying such decrees has demonstrated that a flexible approach is often essential to achieving the goals of reform litigation. The Courts of Appeals have also observed that the public interest is a particularly significant reason for applying a flexible modification standard in institutional reform litigation because such decrees reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions.

*Id.* at 380-81 (citations and internal quotation marks omitted). The Court emphasized, however, that while "a district court should exercise flexibility in considering requests for modification of an institutional reform consent decree, it does not follow that a modification will be warranted in all circumstances." *Id.* at 383.

The Court articulated the standard by which requests for modifications to consent decrees should be judged:

[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance.

*Id.* A "significant change either in factual conditions or in law" can support a requested modification. *Id.* at 384. A significant change in the factual conditions can support a modification if the changed conditions "make compliance with the decree substantially more onerous," if the decree "proves to be unworkable because of unforeseen obstacles," or if "enforcement of the decree without the modification would be detrimental to the public interest." *Id.*; *see Thompson v.*

*HUD*, 220 F.3d 241, 247 (4th Cir. 2000) ("*Thompson I*"). "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Rufo*, 502 U.S. at 385.

## III.

As noted above, the district court concluded that the Local Defendants' nearly complete failure to comply with their obligations was a sufficient change of circumstance to warrant modification of the Consent Decree. On appeal, HUD challenges the district court's decision on several grounds. HUD contends that the parties anticipated that, at the time the court's jurisdiction over HUD was to expire, the Local Defendants might not have fulfilled their obligations under the Decree. HUD thus contends that because the Local Defendants' lack of compliance was anticipated, it cannot be a basis for modifying the Consent Decree. HUD also contends that because it was not responsible for the Local Defendants' failings, it was error for the district court to use those failings as a reason to modify HUD's obligations under the Decree. Finally, HUD contends that the modification was not suitably tailored to the problems identified by the district court.

We review the district court's decision to modify the Consent Decree for abuse of discretion, *see Thompson I*, 220 F.3d at 246, and "we accept the factual findings on which the district court's decision is based unless they are clearly erroneous," *Small v. Hunt*, 98 F.3d 789, 796 (4th Cir. 1996). Such a deferential standard of review is warranted in view of the nature and purpose institutional-reform consent decrees:

> The rule of broad discretion in public interest cases is designed to give the district court flexibility in deciding exactly how the numerous conditions of a complex consent decree are to be implemented in practice. In overseeing broad institutional reform litigation, the district court becomes in many ways more like a manager or policy planner than a judge. Over time, the district court gains an intimate understanding of the workings of an institution and learns what specific changes are needed within that institution in order to achieve the goals of the consent decree.

*Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1338 (1st Cir. 1991); *see also Ruiz v. Lynaugh*, 811 F.2d 856, 861 (5th Cir. 1987) ("We note that a district court's decision to modify a consent decree in an ongoing institutional reform case is committed to that court's discretion because it is intimately involved in the often complex process of institutional reformation. It has the personal knowledge, experience, and insight necessary to evaluate the parties' intentions, performances, and capabilities.").

### A.

HUD contends that the district court's decision to modify the Consent Decree was in error because the circumstance upon which the court based the modification—the lack of compliance by the Local Defendants—was anticipated by the parties at they time they entered into the Decree. HUD points out that the Consent Decree calls for the district court to exercise jurisdiction over the Local Defendants until they fulfilled their obligations under the Decree, but for the court to exercise jurisdiction over HUD until June 2003—seven years after the Decree was approved. HUD thus argues that the parties fully anticipated that HUD might be out of the picture before the Local Defendants fulfilled their obligations under the Decree, and that the district court therefore erred by modifying the Decree based on an anticipated event. *See Thompson I*, 220 F.3d at 248-49 (reversing modification of Consent Decree because modification was based on circumstances that were anticipated at the time the Decree was entered into).

We agree that the parties when executing the Consent Decree must have anticipated the likelihood that HUD would be released from the district court's jurisdiction before the Local Defendants had completed their obligations under the Decree. The structure of the Decree itself leaves no room for doubt on that score. But the district court did not modify the Consent Decree because the Local Defendants had not quite completed all of their obligations; the court modified the Decree because the Local Defendants had done *almost nothing* that they were required to do under the Decree.[2]

---

[2]On this point it is worth restating the most salient fact: Of the 911 hard units of housing that were to have been provided by December 2002, the Local Defendants had managed to provide only *eight*.

HUD argues, however, that the magnitude of the Local Defendants' failure is irrelevant. Since the parties anticipated the possibility that HUD would be released from the court's jurisdiction at a time when the Local Defendants were still performing under the Decree, HUD contends that the modification was impermissible under *Rufo* and *Thompson I*, even if the Local Defendants were farther behind than anticipated. We disagree.

Preliminarily, we note that the issue is whether the parties *actually* anticipated the events giving rise to the modification request; that the events were theoretically foreseeable does not foreclose a modification. *See Rufo*, 507 U.S. at 385 (rejecting the argument that "modification should be allowed only when a change in facts is both 'unforeseen and unforeseeable,'" noting that "[l]itigants are not required to anticipate every exigency that could conceivably arise during the life of a consent decree"). In this case, there is nothing in the Consent Decree or the record to suggest that Plaintiffs anticipated the exceptional magnitude of the Local Defendants' non-compliance. J.A. 508 ("Certainly, the absence of complete compliance with a consent decree is not necessarily extraordinary or unforeseeable. However, failed compliance of the magnitude confronted in the instant case is nothing short of exceptional." (citation omitted)). If the parties had actually anticipated that the Local Defendants would be so far behind on their obligations at this stage in the proceedings, the Consent Decree would never have been executed. The Plaintiffs would not have given up their claims in exchange for an agreement that they anticipated would not be followed, and the Local Defendants would not have subjected themselves to the district court's contempt powers by agreeing to do something they knew they would not be able to do. *Cf. Rufo*, 502 U.S. at 386 (expressing doubt about the argument that rapid increase in prison population was anticipated when the consent decree was executed: "It strikes us as somewhat strange, if a rapidly increasing jail population had been contemplated, that respondents would have settled for a new jail that would not have been adequate to house pretrial detainees."). Under these circumstances, we cannot conclude that the district court abused its discretion by determining that the Plaintiffs did not anticipate the degree of the Local Defendants' non-compliance.[3] *See David C. v. Leavitt*, 242 F.3d 1206, 1213

---

[3]Because the degree of the Local Defendants' non-compliance was not anticipated, this case is not controlled by our prior decision in *Thompson*

(10th Cir. 2001) (affirming district court's decision to modify consent decree by extending its enforcement period because of defendant's significant non-compliance with the terms of the decree: "[I]t would defy logic for Appellees to agree to include the four-year Termination Provision in the Agreement if they actually foresaw that Utah would not be in substantial compliance with the terms of the Agreement at the end of the four-year period."); *see also Small*, 98 F.3d at 796-97 (affirming decision to modify consent decree based on changed circumstance where defendant anticipated small increase in prison population during life of decree but did not foresee the extent of actual increases). Nor can we conclude that the district court abused its discretion by concluding that the change of circumstance was significant enough to warrant a modification of the Consent Decree. *See Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 284 (3d Cir. 2001) ("Courts have extended a decree or parts of a decree when . . . one party was in substantial non-compliance with the decree.").

## B.

HUD contends, however, that even if the degree of the Local Defendants' failure to comply was not anticipated, the only failings specifically identified by the district court were those of the Local Defendants. HUD argues that since it was not at fault for the Local Defendants' delay in compliance, the delay should not have been the basis for a modification of HUD's obligations under the Decree. We disagree.

We first note that this argument seems to proceed on an assumption that a consent decree may be modified only upon a showing of fault. Quite the opposite is true. Consent decrees are frequently modified when the change of circumstance was not brought about by the fault

---

*I*. In *Thompson I*, we reversed the district court's modification of the Consent Decree because the events the district court viewed as a significant change of circumstance had been specifically anticipated by the parties when they entered into the Decree, and important provisions of the Decree were directed to the very set of circumstances that the district court relied upon to support the modification. *See Thompson I*, 220 F.3d at 248-49.

of a party to the agreement. For example, we have held that modifications should be made to consent decrees entered in prison-condition litigation where there was an unanticipated increase in the prison population. *See Small*, 98 F.3d at 796-97; *Plyler v. Evatt*, 846 F.2d 208, 215-16 (4th Cir. 1988). While the cases involved requests by the defendants to modify the consent decree, there is nothing in *Rufo* or our cases involving the modification of consent decrees suggesting that plaintiffs are entitled to modification only if the relevant change of circumstance was brought about by fault on the part of the defendant. And just as the absence of fault does not preclude a modification of a consent decree involving a single defendant, it does not preclude a modification of the obligations of one party to a consent decree as a result of the fault of another party to the decree.

A court's ability to modify a consent decree or other injunction springs from the court's inherent equitable power over its own judgments. *See United States v. City of Miami*, 2 F.3d 1497, 1509 (11th Cir. 1993) ("[A] district court's decision on a request to terminate or modify a consent decree is an exercise of that court's equitable power . . . ."); *SEC v. Worthen*, 98 F.3d 480, 482 (9th Cir. 1996) ("With respect to permanent injunctions, we have held that Rule 60(b)(5) represents a codification of preexisting law, recognizing the inherent power of a court sitting in equity to modify its decrees prospectively to achieve equity." (internal quotation marks omitted)); Fed. R. Civ. P. 60(b)(5) (explaining that a court may relieve a party from an order if "it is no longer equitable that the judgment should have prospective application"). The hallmark of equity, of course, is its flexibility:

> The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision.

*Freeman v. Pitts*, 503 U.S. 467, 487 (1992); *accord Brown v. Board of Educ.*, 349 U.S. 294, 300 (1955) ("[E]quity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs.").

HUD's view is that the modification of its responsibilities under the Consent Decree is inappropriate because it has done nothing wrong and bears no responsibility for the lack of compliance upon which the district court based its decision to modify the decree. We believe that such a position would improperly tie the district court's hands and severely limit the ability to fashion the necessary relief. Institutional reform litigation frequently involves multiple parties with interrelated obligations, such that a breach of duty by one party can require an adjustment to the duties of another party. The district court must be free to exercise its equitable powers as necessary to remedy the problem. *See Rufo*, 502 U.S. at 382 (noting that "rigidity [in applying Rule 60(b)(5)] is neither required . . . nor appropriate in the context of institutional reform litigation"); *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1145 (6th Cir. 1997) ("Equitable considerations are clearly factors a district court can address when they are related to a court's power and duty to modify, interpret, and oversee a consent decree."); *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) ("[B]readth and flexibility are inherent in equitable remedies." (internal quotation marks omitted)). This power must include the right, in appropriate cases, to modify the obligations of a party who was without fault in creating the change of circumstance that gave rise to the need for modification. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 969 (2d Cir. 1983) ("It is well recognized that in institutional reform litigation such as this judicially-imposed remedies must be open to adaptation when unforeseen obstacles present themselves, to improvement when a better understanding of the problem emerges, and to accommodation of a wider constellation of interests than is represented in the adversarial setting of the courtroom."). Thus, the fact that HUD bears no responsibility for the Local Defendants' failure to comply with their obligations does not preclude a modification of HUD's obligations under the Consent Decree.

Accordingly, we conclude that the district court did not abuse its discretion when concluding that the Local Defendants' lack of compliance with their obligations under the Consent Decree was an unanticipated and substantial change of circumstance. We likewise conclude that the absence of fault on the part of HUD does not preclude a modification of HUD's duties under the Consent Decree. The

question thus becomes whether the modification imposed by the district court was proper.

## C.

"Once a court has determined that changed circumstances warrant a modification in a consent decree, the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances." *Rufo*, 502 U.S. at 391. "A court should do no more, for a consent decree is a final judgment that may be reopened only to the extent that equity requires." *Id.*

The district court concluded that enforcement of the Consent Decree would be substantially more difficult if it did not extend the period of jurisdiction over HUD. The court thus concluded that extending the period of its jurisdiction over HUD would serve the public interest, by ensuring the most efficient means of enforcing the decree. The court determined that its jurisdiction over HUD should be "extended only to the extent necessary to meet the original reasonable expectations of the parties and the Court." J.A. at 516. Noting that the Consent Decree called for the court's jurisdiction over HUD to end on June 25, 2003, six months after the date that the Local Defendants were to have provided the 911 hard units of public housing, the district court extended its period of jurisdiction over HUD "until such time as HUD shows that its obligations have been fulfilled approximately to the same extent as the parties and the Court originally and reasonably contemplated would have been fulfilled by June 25, 2003." J.A. 516-17.

In our view, the modification implemented by the district court nicely meets *Rufo*'s requirement that any modification be "suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 391. Although the Local Defendants bear most of the substantive obligations under the Consent Decree, the Decree also imposes various obligations on HUD, many of which are related to the obligations of the Local Defendants.[4] Given that the Local Defendants are so far behind

---

[4]For example, section 3.2.15 of the Consent Decree requires HUD to make available to the Local Defendants certain FHA single- and multi-

in fulfilling their obligations under the Consent Decree and that many of the obligations of the parties are inter-related, the district court properly recognized the utility of retaining jurisdiction over HUD, so as to ensure that the Decree can be efficiently enforced. And by extending the period of jurisdiction only until the Local Defendants reach the milestones that should already have been reached when jurisdiction over HUD originally was to expire, the district court modified the decree no more than was necessary to approximate the positions the parties would have occupied had the Local Defendants lived up to their obligations under the Consent Decree.[5] *See Pigford v. Veneman*, 292 F.3d 918, 927 (D.C. Cir. 2002) ("[A] 'suitably tailored' order would return *both* parties as nearly as possible to where they would have been absent [the changed circumstance giving rise to the modification request]."); *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1020 (6th Cir. 1994) (finding district court's modification of consent decree to be suitably tailored to the changed circumstance because, among other things, "the modification operates

---

family properties, properties that the Local Defendants are to develop as part of the hard housing units required under the Decree. Section 3.2 of the Decree requires the Local Defendants and HUD to work together to create a plan for a home ownership program. Implementation of many aspects of the plan is dependent on HUD approval. The Consent Decree also imposes on HUD and the Local Defendants numerous continuing obligations with regard to the Mobility Counseling Services program created by the Decree.

[5]HUD contends that the Consent Decree's provision retaining jurisdiction over it for seven years was in no way linked to the other provisions of the Decree requiring the Local Defendants to comply with various obligations within six and a half years. Thus, HUD argues that it was improper to structure the modification to reflect a similar time frame. We disagree. To be sure, the Consent Decree does not contain language linking the two time frames—that is, the Decree does not state that the court will retain jurisdiction over HUD for six months past the date that the Local Defendants provide the required hard units of housing. Nonetheless, the Consent Decree as a factual matter did just that —provided for the retention of jurisdiction over HUD for a period that happened to be six months after the date that the Local Defendants were to have delivered the housing units. It was thus entirely proper for the district court to modify the Decree in a way that reflected a similar time frame.

along the lines of the consent decree" and "the modification merely allows additional time in which to promote the minority firefighters as would have occurred under the consent decree, if the minority pass rates on the 1984 and 1985 promotional examinations had not been lower than expected").

HUD, however, argues that the relief fashioned by the district court was not suitably tailored to remedy the problem at hand. According to HUD, the Consent Decree's retention-of-jurisdiction provision was "the heart" of its bargain, Brief of Appellants at 18, and the district court's re-writing of that clause can hardly be considered a suitably tailored remedy.[6]

---

[6]This argument, as well as others made by HUD, seems to teeter on the edge of asserting that the modification was improper because it was inconsistent with the terms of the Consent Decree. Such an argument, of course, would be doomed to fail. Issues of interpretation and enforcement of a consent decree typically are subject to traditional rules of contract interpretation, and the district court's authority is thus constrained by the language of the decree. *See Johnson v. Robinson*, 987 F.2d 1043, 1046 (4th Cir. 1993) ("A federal district court may not use its power of *enforcing* consent decrees to enlarge or diminish the duties on which the parties have agreed and which the court has approved." (emphasis added)). A court's inherent power to *modify* a consent decree, however, is not circumscribed by the language of the decree. *See System Fed'n No. 91 v. Wright*, 364 U.S. 642, 651 (1961) (noting that the Court "has never departed from th[e] general rule" that a court always retains the authority to modify a consent decree; "[t]he parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction"); *David C.*, 242 F.3d at 1210-11 ("[A] court's equitable power to modify its own order in the face of changed circumstances is an inherent judicial power that cannot be limited simply because an agreement by the parties purports to do so. . . . To hold otherwise would allow the parties, by the terms of their agreement, to divest a court of its equitable power or significantly constrain that power by dictating its parameters."); *Johnson*, 987 F.2d at 1050 (explaining that "a district court may, of course, modify a consent decree to impose new duties upon a party"); *South v. Rowe*, 759 F.2d 610, 613 (7th Cir. 1985) ("[T]he parties could not agree to restrict the court's equitable powers to modify its judgment enforcing the consent decree, including the two-year limitation period, in light of 'changed circumstances.'").

We recognize that, generally speaking, a district court modifying a consent decree should strive to "preserve the essence of the parties' bargain." *Pigford*, 292 F.3d at 927. The retention-of-jurisdiction clause, however, is but one part of a more than 80-page agreement, an agreement that imposes numerous obligations on HUD. While we do not doubt the importance of the clause to HUD, that importance simply does not place the clause beyond the reach of the district court's inherent modification powers. *See Rufo*, 502 U.S. at 387 ("If modification of one term of a consent decree defeats the purpose of the decree, obviously modification would be all but impossible. That cannot be the rule."); *see also Holland*, 246 F.3d at 282 ("[T]he broad remedial power contained within the modification and compliance enforcement powers can be used to extend a consent decree."); *David C.*, 242 F.3d at 1210 (rejecting argument that "courts have no equitable power to modify material provisions" of a consent decree).

Finally, HUD suggests that the district court's modification went beyond what was necessary to address the changed circumstances, because the modification imposes substantial new obligations on HUD and has provided an opening for the Plaintiffs to seek to hold HUD in contempt for violating the terms of the Consent Decree. Again we disagree.

As HUD concedes, it has obligations under the Consent Decree that extend well beyond the date that the court's jurisdiction over HUD originally was to expire. Therefore, even if the district court had declined to modify the retention-of-jurisdiction clause, the court's inherent authority over its own judgment would have provided it with the continuing authority to enforce the Consent Decree against HUD. *See Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced."); *System Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961) (explaining that injunctions "often require[ ] continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief"); *Brewster v. Dukakis*, 3 F.3d 488, 491 (1st Cir. 1993) ("[S]o long as the injunction endures, the district court's enforcement authority can always be 'reawakened.'"); *In re Pearson*, 990 F.2d 653, 657 (1st Cir. 1993) ("[W]hen . . . an injunction entered pursuant to a consent decree has

ongoing effects, the issuing court retains authority to enforce it."); *Hook v. Arizona Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992) (concluding that district court had jurisdiction over motion to seeking to hold defendants in contempt for violating consent decree in case that had been closed for 16 years: "A district court retains jurisdiction to enforce its judgments, including consent decrees. Because the inmates allege a violation of the consent decree, the district court had jurisdiction." (citation omitted)); *United States v. Fisher*, 864 F.2d 434, 436 (7th Cir. 1988) ("[W]hen a court issues an injunction, it automatically retains jurisdiction to enforce it."); *Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees. . . . Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender." (internal citations omitted)). Thus, the modification of the Consent Decree exposes HUD to no greater risk of contempt than if the modification had not been granted.[7]

---

[7]The district court in its order suggested that if it did not extend its jurisdiction over HUD, enforcement of HUD's continuing obligations under the Decree would be relegated to the independent actions under the Administrative Procedure Act with its strict arbitrary and capricious standard of review. *See* J.A. at 511-12. Given a court's inherent power to enforce a consent decree, we question whether the district court's prediction about future enforcement mechanisms was accurate. Nonetheless, the court's extension of its jurisdiction over HUD significantly improved the court's ability to monitor and enforce the Consent Decree. For example, by virtue of the extension of jurisdiction, HUD remains an active party to the litigation, and its presence and participation at hearings can be required by the court. The district court has been intimately involved with this case from the very beginning and is thus in the best position to determine what actions might be necessary to enforce the Consent Decree, and, ultimately, to bring this litigation to a close. Given the interrelatedness of the obligations of HUD and the Local Defendants, we cannot say that the district court abused its discretion by concluding that HUD's active presence and participation in the litigation was necessary to effectively monitor and enforce the Consent Decree. *See Langton v. Johnston*, 928 F.2d 1206, 1221 (1st Cir. 1991) ("[T]he due administration of [an institutional reform consent] decree calls for a certain deftness of touch.").

## IV.

To summarize, we conclude that the district court properly found that the Local Defendants' near total failure to comply with the terms of the Consent Decree was an unanticipated change of circumstance that warranted modifying the Consent Decree. Because many of the obligations of HUD and the Local Defendants under the Decree are inter-related, the district court did not abuse its discretion by concluding that the Decree should be modified to extend the period of the court's retention of jurisdiction over HUD. The district court's modification of the Decree was suitably tailored to the problems created by the change of circumstance, as required by *Rufo*. Accordingly, the district court's order modifying the Consent Decree is hereby affirmed.

*AFFIRMED*